[No. 27671. Department Two. October 19, 1939.]

ROY HARMON, *Respondent*, v. ROSS GOULD *et al.,*
*Appellants.*[1]

[1]Reported in 94 P. (2d) 749.

*Hoof & Winston,* for appellants.

*Ross W. Watt,* for respondent.

BEALS, J.—Plaintiff is in possession of the south half, and defendants of the north half, of the northwest quarter of the northeast quarter of section 35, township 25 north of range 1 east, two twenty-acre tracts of rather rough land in Kitsap county. Both tracts at one time belonged to one Hanson, who for many years resided upon the tract now owned by plaintiff. About 1915, Hanson sold the tract now owned by defendants to a Mr. Anderson, who allowed the property to remain vacant.

Plaintiff's tract is somewhat higher than that owned by defendants, and contains about five acres of swamp land. Near the boundary line of the two tracts, but on plaintiff's property, is a natural ridge, which rises somewhat above the adjoining portion of plaintiff's land, and which forms a natural dam, preventing or retarding the flow of water from the swamp across defendants' property. During the period of Mr. Hanson's ownership of both tracts, he excavated a channel through this ridge of land and dug a ditch across the property now owned by defendants, for the purpose of draining the south twenty. This was done thirty-five or forty years prior to the trial of this action. Prior to 1920, Mr. Hanson and his family ceased to reside upon the south twenty, and subsequent to that time, used the property only for pasture.

During the year 1928, Kitsap county acquired the north twenty by tax foreclosure proceedings, and during the year 1932, the county acquired the south twenty in a similar manner. March 10, 1933, Kitsap county agreed to sell the south twenty to plaintiff, and May 11, 1934, defendants entered into a contract with the county for the purchase of the north twenty. It appears that, ever since, the parties have been in possession of their respective tracts under their contracts with the county.

Between 1933 and 1936, plaintiff re-excavated the ditch across the north twenty, and during the month of January, 1939, defendants filled the ditch, to prevent the flow of water from plaintiff's land. Plaintiff thereupon instituted this action, alleging his ownership of the south twenty, defendants' ownership of the north twenty, and that for forty years prior to the institution of the action, a ditch three feet deep and three feet wide had existed across defendants' land, draining a portion of plaintiff's land; that the ditch was an artificial structure, and that plaintiff's right to have the same remain open and clear had been established by prescription, founded on open and hostile possession and use continued for more than seven (later amended to ten) years; that plaintiff had expended time and money in keeping the ditch free of obstructions so that water would flow through the same without interruption; that defendants, during the month of January, 1939, obstructed the ditch, causing water which ordinarily flowed over plaintiff's land to back up and flood plaintiff's property. Plaintiff asked for a decree requiring defendants to clear the ditch and restraining them from obstructing the same, also asking for damages.

Defendants answered, admitting that an artificial drainage ditch crossed their property. They admitted

having obstructed the ditch, but denied the other material allegations of plaintiff's complaint.

The action was tried to the court, sitting without a jury, and resulted in findings of fact and conclusions of law in plaintiff's favor, followed by a decree permanently enjoining defendants from obstructing the ditch and granting plaintiff the right to go upon defendants' property for the purpose of maintaining the ditch in good condition. Plaintiff was granted judgment for one dollar by way of damages, together with costs. From this decree, defendants have appealed.

Appellants assign error upon the court's finding that the ditch is a natural watercourse and a benefit to appellants, and that the water accumulating on respondent's land and running by gravity flow across appellants' property has created an easement in respondent's favor. Appellants also assign error upon the entry of judgment against them, and upon the denial of their motion for judgment in their favor notwithstanding the decision.

Respondent prepared his complaint upon the theory that he had, by prescription, become the owner of the right to use and maintain an artificial drainage ditch across appellants' property. By their answer, appellants admitted the existence of such an artificial ditch, but denied that respondent was the owner of any easement across their land which would permit respondent to use and maintain the ditch. The action was tried upon the issue as presented by the pleadings, but after the cause had been submitted for decision, the trial court, while expressing, in an oral resume of the case, the view that an easement by prescription existed, later filed a written memorandum decision stating the proposition that the ditch was a natural watercourse, and that respondent's right to use and maintain the ditch exists inevitably, because respondent's land is

higher than appellants' and is drained through it, the water having obeyed the law of gravitation during time beyond the memory of man. The court also stated that the situation would be entirely different if in fact the ditch were not a natural watercourse. The court found the ownership of the land to be as alleged, and, by finding III,

"That for more than fifty years last past there has been in existence a ditch averaging about three feet deep and three feet wide running across the said land of the defendants and draining a certain area located on the said land of the plaintiff. That said ditch follows the course of a natural drainage channel which has been improved and straightened by the hand of man, but still follows its ancient natural course. That at some time prior to the improvement of said watercourse, the flow of water across the defendants' land was restrained by a natural rim or dike along the boundary between the two above described pieces of property, which rim or dike caused water to accumulate in the rainy season and form a bog or marsh on the property now belonging to plaintiff, and that when the water became sufficiently high it spilled over the lowest point of the rim and flowed across the property now belonging to the defendants, and that some fifty years ago the then owner of both tracts above described cut through this time and deepened and straightened the natural channel of the water, thus permitting the ditch to drain the marsh across the land now owned by the defendants. That in the rainy season water flowed out of this channel or ditch and joined the creek, which took it to Puget Sound.

"That the court finds this is a natural watercourse and is of a distinct benefit to the defendants as well as to the plaintiff, and that the amount of additional water flowing through said ditch, because of the lowering of the natural rim between the properties, is not great, and the defendants are not damaged in any way thereby.

"That defendants, at the time of their purchase of said property, knew of the existence and purpose of

said watercourse, and that any obstruction placed in said watercourse by the defendants will result in flooding a portion of the property of the plaintiff, some five acres, and that said area so flooded is valuable agricultural land.

"That the easement created by said watercourse is a natural one formed by water seeking its own level."

■ Respondent argues that, as appellants did not except to this finding, they cannot challenge it for the first time on appeal. Under Rule XI of the Rules of Practice, 193 Wash. 48-a, exceptions to findings need not be taken, and appellants may challenge before this court the finding of which they complain.

By the prayer of his complaint, respondent sought merely a decree requiring appellants to clear the obstructions from the ditch, and restraining them from obstructing it in the future. He did not ask that his title to an easement across appellants' property be decreed and quieted, but his complaint would support such relief, if justified by the law and the evidence. Appellants in their answer simply prayed for the dismissal of the action and for their costs.

The decree which the trial court entered required appellants to clear the ditch and permanently restrained them from in any manner interfering with the free flow of water therein. The decree also awarded respondent the right to enter upon appellants' property whenever necessary for the maintenance of the ditch.

The trial court was evidently of the view that the ditch was simply an enlargement of an ancient watercourse, through which water escaped from respondent's land. While the evidence as to the difference in elevation between the two tracts is not very clear, appellant husband testified that a considerable portion of their land is higher than respondent's tract. It ap-

pears that the level of the swampy portion of appellants' land has been lowered by burning, the natural dike or bank on respondent's property near the line between the two tracts being from three to five feet in height. It is evident that this solid dike retained excess water on respondent's property, to the damage of the property, and that the original cutting through the dike and digging of a ditch by Mr. Hanson was accomplished to allow such excess water to escape. There is evidence to the effect that water would sometimes reach such a height on respondent's land that it would flow over the top of the dike and run down on the north twenty. The ditch, of course, runs in a northerly direction from respondent's south twenty, and at some distance to the north, which distance we are unable to determine exactly from the evidence, connects with what is undoubtedly an ancient watercourse. Naturally, in digging the ditch, Mr. Hanson followed the lowest course over the north twenty, but it appears that the ditch, during most of its length across the north twenty, was from four to seven feet deep. Respondent testified that the ditch averages about three feet in width and about four and one-half feet in depth. The evidence indicates that the ditch is something over seven feet deep on the south line of appellants' property and approximately two and one-half feet deep on the north boundary.

As the cut through the dike along the north edge of the south twenty has been in existence for many years, it is evident that no one can say, with any degree of certainty, whether or not the water on respondent's tract would at any time during recent years have attained such a height that it would flow over the top of the dike, were there no break therein; indeed, the fact that, even with the break in the dike, respondent complains that the water will not flow from his land

unless the ditch be maintained at a considerable depth, indicates that there is not a very decided natural drainage from the south twenty across the northerly tract.

Respondent's right to the maintenance of natural drainage from his land to the north is one thing, and his right to maintain a deep artificial ditch across the north twenty is an entirely different thing. The action was tried, apparently, entirely upon the theory that respondent claimed by prescription an easement entitling him to maintain an artificial ditch across appellants' land. Appellants vigorously denied the existence of any such right. Apparently, the theory that the digging of the ditch was simply a deepening of an ancient watercourse was not suggested until after the case was closed, and after respondent's theory that he was entitled to an easement by prescription had been extensively argued.

It clearly appears that water flows from the south twenty across the north twenty only at certain seasons of the year. It does not appear that, within the memory of man, there was ever anything like a steady flow of water to the north from respondent's land.

Careful examination of the evidence convinces us that the finding of the trial court above quoted, to the effect that the ditch follows an ancient natural watercourse, is not supported by the evidence. The mere fact that surface or swamp water accumulating on the south twenty, when it reached a certain level, would run on, and some of it across, the north twenty, following, of course, the lowest contours of the land, does not, under the evidence of this case, support a finding that there was a natural watercourse across appellants' property.

We are not unmindful of respondent's argument that the fact that the flow of water along a regular watercourse is intermittent, is not material. *Tierney v.*

*Yakima County,* 136 Wash. 481, 239 Pac. 248. The case concerned one of the channels of the Yakima river, the opinion reciting that the channel had a bed and banks which were evidently clearly defined. The case is not at all in point on the facts.

It is also the law, as was held in the case of *Rigney v. Tacoma Light & Water Co.,* 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425, that the artificial deepening of an ancient watercourse may not change its character. In the case cited, it is noted that the creek referred to, since the earliest settlement of the country, had flowed in a definite and easily distinguished channel, which was seldom, if ever, dry.

We are constrained to hold that the court's finding that the ditch followed an ancient watercourse has no substantial support in the record.

This view of the evidence renders necessary a discussion of respondent's claim that he, by prescription, is entitled to an easement across appellants' property.

It may be assumed, for the purposes of argument, that when, in 1915, Mr. Hanson sold the north twenty to Mr. Anderson, a severance of title took place, which might result in the creation of an easement in favor of the owner of the south tract. When Kitsap county, in 1928, foreclosed its lien for general taxes against the north twenty, and obtained title to the land, any possible right to an easement was extinguished. The county, of course, obtained title by tax foreclosure to the south tract in 1932.

Rem. Rev. Stat., § 11260 [P. C. § 6882-99], reads as follows:

"All taxes and levies which may hereafter be lawfully imposed or assessed shall be and they are hereby declared to be a lien respectively upon the real property upon which they may hereafter be imposed or

assessed, which liens shall include all charges and expenses of and concerning the said taxes which, by the provisions of this act, are directed to be made. The said lien shall have priority to and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or responsibility to or with which said real property may become charged or liable."

In the case of *Hanson v. Carr,* 66 Wash. 81, 118 Pac. 927, the plaintiff sought to quiet title as against an easement claimed by the defendants under a grant from the prior owner of the property. A decree in favor of the defendants was by this court reversed, and the cause remanded for the entry of a judgment quieting the plaintiffs' title. It was held that the tax lien was paramount to all other liens or claims, and that

"When foreclosure of such lien is made and real estate is sold thereunder, the fee passes to the purchaser, and all grants made by the owner of the fee must, of course, fall with the foreclosure."

The court called attention to the fact that the claimants under the grant might have had the land covered by their grant segregated by the taxing authority, but that, having neglected to do this, or to pay the taxes, they had lost their opportunity to protect their rights.

Clearly, this must be the law. The collection of taxes would be seriously hindered, if a taxing authority be required to examine each tract of land for possible easements based upon prescriptive or other claims not of record, concerning which it might well be exceedingly difficult to obtain information. A person claiming any such right may protect his interest by seasonably demanding a segregation and the opportunity to pay the taxes upon the land which he claims. Failing to do this, generally speaking, any rights which he may possess are cut off by a general tax foreclosure.

Such was clearly the case here. Respondent obtained possession of the south twenty in 1933, during which year he entered into a contract with Kitsap county for the purchase of the land. May 11, 1934, by a written contract, which is in evidence, appellants agreed to purchase from Kitsap county the north tract. Manifestly, respondent cannot show any possession or claim to any easement across appellants' property for the period necessary under the statutes of limitation to give him title by prescription.

This court has consistently followed the rule laid down in the case of *Hanson v. Carr, supra.* In the case of *Gustaveson v. Dwyer,* 78 Wash. 336, 139 Pac. 194, it was held that the foreclosure of a tax lien, being a proceeding *in rem,* vests in the purchaser a new title, superior to any possessory right, however exclusive or adverse.

In the case of *Sparks v. Standard Lumber Co.,* 92 Wash. 584, 159 Pac. 812, this court approved the doctrine that a tax title is the equivalent of a decree quieting title in the purchaser as a grant from a sovereign state.

The case of *Wilson v. Korte,* 91 Wash. 30, 157 Pac. 47, is to the same effect, as is that of *Tamblin v. Crowley,* 99 Wash. 133, 168 Pac. 982, in which case it was directly held that a private easement was extinguished by a tax foreclosure.

Respondent contends that, in the foregoing cases, this court has followed the minority rule; and that, as a tax foreclosure is a proceeding *in rem,* in order to defeat an existing easement, the tax assessments upon which a foreclosure is based should specifically mention any easements which are sought to be extinguished. We cannot follow this argument, which would place far too great a burden upon the officers whose duty it is to levy, assess and collect taxes. An

easement is included in the *res*. The owner of any easement or similar right has ample opportunity to protect himself in its enjoyment. The burden properly rests upon him to do so.

As all preexisting rights, if any, in favor of the owners of the south twenty, were extinguished by the county foreclosure against the north twenty, because of his limited period of claim to the south twenty respondent can assert no rights to an easement across the north tract.

The trial court expressly found that respondent is the owner of the south twenty, and appellants the owners of the north twenty. This finding is contradicted by the evidence, from which it clearly appears that both parties claim under installment real estate contracts which they respectively entered into with Kitsap county. While it is probable that one lawfully in possession of land may maintain an action to protect his full enjoyment of the use of the property, we express no opinion as to the extent of the right to maintain such action, and we also express no opinion as to the right of such a person to sue a neighbor who is in possession merely under an executory contract of purchase, without making the owner of the fee a party to the action. These questions were not suggested by counsel for either party, nor were they called to the attention of the trial court. In view of the conclusion we reach upon the record as made, discussion of these questions is unnecessary.

The decree appealed from is reversed, with instructions to the trial court to dismiss the action.

BLAKE, C. J., STEINERT, GERAGHTY, and JEFFERS, JJ., concur.