[No. 29806. Department Two. June 21, 1946.]

R. B. JOHNSON, *Appellant,* v. GUST BURGESON, *Respondent.*[1]

[1]Reported in 170 P. (2d) 311.

*Ned W. Kimball,* for appellant.

*A. J. Hensel* and *O. R. Hopewell,* for respondent.

BLAKE, J.—Plaintiff brought this action in 1943 to quiet title to the west sixteen feet of lot 7, block 11, Kincaid's First Addition to the town of Waterville. His claim of title is based upon adverse possession of the property since 1930. The defendant's title stems from a deed issued by the treasurer of Douglas county to his (defendant's) grantor in July, 1939. The county had acquired title to the whole of lot 7 in November, 1936, through foreclosure and sale for delinquent taxes.

That plaintiff was in continuous and open possession of the sixteen feet in question until defendant acquired title in October, 1939, is not open to dispute; and it may be conceded that he continued in such possession thereafter for a sufficient length of time to establish a title by prescription, unless the period of prescription had been interrupted during the time the title to the property was held by the county. For it is apparent that plaintiff's possession had not ripened into a title by prescription at the time the county acquired title to lot 7 in 1936. That his possession subsequent to the time the county parted with title in 1939 could not ripen into title by prescription, is also obvious.

The trial court was of the view that, under the decision of this court in *Gustaveson v. Dwyer,* 78 Wash. 336, 139 Pac. 194, notwithstanding plaintiff's actual possession of the property, he could not include the period during which the county held title as a part of the necessary time which must be computed in establishing title by prescription. A judgment was accordingly entered dismissing plaintiff's action and quieting title in defendant. Plaintiff appeals.

Appellant concedes that the decision in *Gustaveson v. Dwyer, supra,* is controlling unless modified. In that case, the court was confronted with facts which, in all essential features (save one, to be noted later), were indistinguishable from those in the one at bar. The question as to whether the period a county holds title to property acquired under sale for taxes may be computed in part as a

basis for establishment of title by prescription, was exhaustively discussed in both a Departmental opinion and an opinion on rehearing *En Banc,* 83 Wash. 303, 145 Pac. 458. In the Departmental opinion, the court said:

"In the light of the provisions of our revenue statutes, and the decisions of this court, it seems unnecessary to indulge in lengthy discussion to demonstrate that, in no event, could appellant's possession existing prior to the tax sale to the county on August 23, 1902, however exclusive or adverse that possession may have been, in the least impair the tax title of the county then acquired or the title of its grantees, after that date. By the provisions of Rem. & Bal. Code, § 9230 (P. C. 501, § 205), the lien of general taxes is declared to be superior to all other liens and claims upon the property against which such taxes are charged. The regular foreclosure of such a lien as was concededly had against this lot has, under our revenue law, all the force of a proceeding *in rem, Continental Distributing Co. v. Smith,* 74 Wash. 10, 132 Pac. 631, *and vests in a purchaser at a sale held under such foreclosure a new title independent of all previous titles or claims of title to the property. Hanson v. Carr,* 66 Wash. 81, 118 Pac. 927. *Manifestly, both record and possessory titles are equally absolutely destroyed by such a foreclosure.* Such is the theory upon which the following decisions of this court were rendered, though they involved only the question of superiority of general tax liens over local assessment liens. *McMillan v. Tacoma,* 26 Wash. 358, 67 Pac. 68; *Keene v. Seattle,* 31 Wash. 202, 71 Pac. 769; *Ballard v. Way,* 34 Wash. 116, 74 Pac. 1067, 101 Am. St. 993; *Pennsylvania Co. v. Tacoma,* 36 Wash. 656, 79 Pac. 306; Black, Tax Titles (2d ed.), § 420. Clearly, adverse possession prior to the creation of a tax title lends not the least support to the title claimed thereafter.

"Assuming that appellant's possession was continuous while the county held its tax title to the lot from August 23, 1902, until conveyance to Hill on February 23, 1904, was such possession of any avail to appellant in support of his present claim of title by adverse possession? If not, manifestly, his legal adverse possession did not continue for ten years prior to the commencement of this action, since less than nine years has expired since the county's conveyance to Hill. Counsel for appellant insist that the county held title to the lot in its private capacity and not for any specific public use, and that, therefore, the statute of limitations

would run against it and in favor of appellant's adverse possession as against a private person." (Italics ours.)

On rehearing, the court held to these views, saying, p. 305:

"We regard the vital question here to be, does the county hold land acquired by purchase at tax sale for want of another purchaser in a governmental capacity as distinguished from a proprietary capacity; since it is plain the statute would not run against the county in the former instance but would in the latter. . . .

"We are of the opinion that the general statute of limitations, though by its terms made applicable to counties, does not run against the county in favor of an adverse possessor of the land while the title of the land rests in the county."

The reasoning in these opinions seems to us conclusive of the issue there and here presented; and, to us, the conclusion reached is inevitable and just.

But appellant urges that, in view of the following language used in the *En Banc* opinion, a different result might have been reached had the court been confronted with the fact, as here, that improvements had been placed upon the property. Argumentatively, the court said, p. 312:

"While the land *was held by the county* by virtue of its purchase at tax sale appellant made no improvements thereon adding to its value in the least." (Italics ours.)

Improvements had been made by appellant upon the sixteen feet in controversy. It is not at all clear, however, that any were made during the time the county held title. Conceding, though, that there were, none remained at the time of the trial that added to the market value of the property. The only significance that can be ascribed to the language last quoted from *Gustaveson v. Dwyer* is that a purchaser from the county might possibly be required to reimburse one who, through mistake, had in good faith made improvements on the property which enhanced its market value.

In other words, the only inference to be drawn from the language quoted is that, under appropriate circumstances, a court of equity might apply the doctrine of unjust enrichment. There is no evidence in the record in the instant case

which would warrant the application of that doctrine. The only improvements placed upon the property which remained at the time of trial were some trees and shrubbery and a driveway. It is not at all clear that any of these improvements were made during the period the county held title; and there is no evidence as to how much, if at all, the market value of the property was enhanced by them.

The record in this case is devoid of any evidence which would warrant the court, under its broad equitable powers, in affording any relief to appellant.

Judgment affirmed.

BEALS, C. J., ROBINSON, JEFFERS, and CONNELLY, JJ., concur.