[No. 30271.   Department Two.   February 20, 1948.]

O. S. RUSHTON, *Appellant*, v. VICTOR BORDEN, *Respondent and Cross-appellant.*[1]

[1]Reported in 190 P. (2d) 101.

*Frank L. Morgan, Charles W. Smith,* and *Lester Strit-matter,* for appellant.

*John D. Ehrhart* and *Clark W. Adams,* for respondent.

ROBINSON, J.—This is an action to quiet title to the following described real property, in Grays Harbor county, Washington:

"That portion of the Northwest Quarter of the Southeast Quarter (NW ¼ of SE ¼) of Section 16, Township 18 North, Range 11 W. W. M., described more particularly by metes and bounds as follows:

"Commencing at the Southwest corner of the Northwest Quarter of the Southeast Quarter of said Section, thence Easterly along the Southerly boundary line of said Quarter to a point 50 feet from Jessie's slough; thence North on a line parallel with the Westerly boundary line of said Northwest Quarter to the County Road; thence Westerly along the South line of said road to West line of said Northwest Quarter; thence South along said line to place of beginning."

The location of the southwest corner of the northwest quarter of the southeast quarter of section 16, township 18 north, range 11 west, W.M., which would also be the northwest corner of government lot 3, which lies immediately south of the northwest quarter of the southeast quarter; is a pivotal point in the decision of the case.

No opinion in this case can be intelligible unless read with reference to a map showing the location of the property involved. The map which follows is prepared from defendant's exhibit No. 5, on which we have placed additional points and lines essential to a visualization of the problem here presented.

The trial court found, and we believe correctly, that the corner in question falls within the county road referred to in the description and which is marked "⅛ corner" on the map, and that, consequently, there is no such tract as that described in the complaint. (The county road referred to was built in 1922 and reconstructed in 1931.)

If the corner in question were where appellant contends it is, it would be at a point marked by a ½ inch galvanized iron pipe, 133 feet south and 10.5 feet west of the point

the trial court found to be the true corner. In view of the trial court's finding, which we affirm, the legal description of the tract which appellant claims to own would be:

Those portions of government lot 4, government lot 3, and the northwest quarter of the southeast quarter of section 16, township 18 north, range 11 west, W.M., described more particularly by metes and bounds as follows: Commencing at a point 133 feet south of and 10.5 feet west of the southwest corner of the northwest quarter of the southeast quarter of said section; thence easterly parallel to the southerly boundary line of said northwest quarter of the southeast quarter 140 feet, more or less, to a point 50 feet from Jessie's slough; thence north on a line parallel to the westerly boundary line of government lot 3 and the westerly boundary line of said northwest quarter of the southeast quarter 170 feet, more or less, to the county road; thence southwesterly along the southerly line of said road 155 feet, more or less, to its intersection with a line drawn through the point of beginning and parallel to the westerly line of said government lot 3 and 10.5 feet westerly therefrom; thence south along the line just described 102 feet, more or less, to the point of beginning.

This tract will be referred to hereafter as tract ABC. It would include a portion of government lot 4 approximately 102 feet north and south by 10.5 feet east and west, which will be referred to hereafter as tract A. The major portion of tract ABC would be in government lot 3, which portion of the entire tract just described will be referred to hereafter as tract B. It would also include a small triangle in the northwest quarter of the southeast quarter, which will hereafter be referred to as tract C, and which could be described as follows:

Beginning at the intersection of the southerly line of the county road with the south line of the northwest quarter of the southeast quarter; thence east along the said south line a distance of 73 feet, more or less, to the east line of tract ABC; thence north along the east line of tract ABC 39 feet, more or less, to the southerly line of the county road; thence southwesterly along the southerly line of the

county road a distance of 80 feet, more or less, to the point of beginning.

It will be observed that we are referring to that portion of tract ABC which is in government lot 4 as tract A; to that portion which is in government lot 3, as tract B; and to that portion which is in the northwest quarter of the southeast quarter, as tract C.

Tract ABC would have no frontage on Jessie's slough, and the easterly line would be fifty feet west of the slough at its southeasterly corner, in accordance with the call in the description, and its point of closest proximity to the slough would be roughly twenty feet, as measured on defendant's exhibit No. 5. Its principal value lies in the use that could be made of it by fish buyers during the two and one-half months of the fishing season, or as a place for fishermen to live.

It may be conceded that, if tract ABC were actually in the northwest quarter of the southeast quarter of section 16, township 18 north, range 11 west, W. M., appellant would have legal title to it and would be entitled to the relief requested. It may likewise be conceded that the owners of the northwest quarter of the southeast quarter have regarded tract ABC as a part thereof, at least since Ed Loff and the witness Mathias E. Bloom acquired title thereto on May 22, 1924. Witness Bloom testified that he burned brush on tract ABC, used the tract for pasture, and built a fence along its south line. (There is no evidence that any portion of that fence still remains.)

Believing that tract ABC was a part of the northwest quarter of the southeast quarter, Mathias E. Bloom and wife, and Ida Loff, the widow of Ed Loff, conveyed that tract to H. H. Schwartz on January 11, 1934, by a deed in which the same description was used as appears in the first paragraph of this opinion. Shortly after this deed was recorded, which was on February 10, 1934, it came to the attention of the assessor of Grays Harbor county, and he, after consulting a map which had been furnished to the state commissioner of public lands for the purpose of securing a right of way across section 16 for the county road

referred to (section 16 being state school land), concluded that there was an area in the northwest quarter of the southeast quarter south of the county road corresponding to the description in the deed, and marked it in yellow on a map in the assessor's office, as a segregated portion of the northwest quarter of the southeast quarter; and for assessment and taxation purposes it was referred to as "Tax No. 2," and was so shown upon the maps and records of the assessor's office. The wording of the description of "Tax No. 2" in the assessor's record is not identical with that appearing in the first paragraph of this opinion, but the description covers the same property—or would, if there were any such tract in the northwest quarter of the southeast quarter of section 16, township 18 north, range 11 west, W. M.

It may further be conceded that, from the time of the deed to H. H. Schwartz, "Tax No. 2" was assessed and taxes levied thereon, which taxes were paid by him up to and including the year 1945. Subsequent to January 11, 1934, and up to the time of his deed to appellant, Mr. Schwartz used tract ABC each year during the two and one-half months of the fishing season, in connection with his occupation as a fish buyer. During that period, he furnished the lumber for, and an employee built, a two-room shack thereon for fishermen to live in during the fishing season.

On October 3, 1945, H. H. Schwartz executed a deed to the appellant, using the description as in his deed from the Blooms and Mrs. Loff. Appellant used tract ABC during the 1945 fishing season. (Sometime during 1945, appellant also secured a deed from Mr. and Mrs. Bloom and Mrs. Loff to all of the northwest quarter of the southeast quarter. The deed is in evidence, but neither the deed nor the acknowledgment contains any date except the year 1945.)

Respondent specifically disclaims any interest in the northwest quarter of the southeast quarter of section 16, township 18 north, range 11 west, W. M., and thus disclaims any interest in tract C. While there is no express disclaimer by the respondent of any interest in tract A (being that portion of tract ABC in government lot 4), he

asserts no interest or claim of ownership therein. However, as the owner of government lot 3, he does claim ownership of tract B, which is that portion of tract ABC in government lot 3. Grays Harbor county acquired title to government lot 3 by a tax deed dated October 31, 1942, in consequence of its foreclosure of its lien for general taxes thereon. Thereafter, government lot 3 was sold on contract and all of the contract vendees assigned their interest therein to W. H. Abel, to whom the Grays Harbor county treasurer conveyed the property on December 11, 1945; and he, in turn, conveyed it to the respondent on that same date.

This action was brought by appellant to quiet title to tract ABC, and for damages for interference by respondent with his possession thereof; however, the land description used was that first set forth in this opinion. From a judgment dismissing appellant's action and quieting title, not only to tract B but to all of government lot 3, in the respondent and awarding respondent nominal damages in the amount of one dollar for trespass, this appeal is taken.

■ Appellant's first contention is that the description used by him is correct, and that the point of beginning of the description of what we have referred to as tract ABC is in fact the southwest corner of the northwest quarter of the southeast quarter of the section, and that all of the tract is within the northwest quarter of the southeast quarter, and, consequently, none of it is in government lot 3. He relies upon the galvanized iron pipe referred to as marking either the actual or the long-established and generally recognized corner common to the northeast quarter of the southwest quarter (southeast corner), the northwest quarter of the southeast quarter (southwest corner), government lot 4 (northeast corner), and government lot 3 (northwest corner).

The evidence preponderates against its being the actual or true corner common to the named subdivisions, and there is no testimony that any owner of government lot 3 has ever recognized it as such. Appellant places great emphasis upon the fact that, in 1922, the late Clark V. Savidge,

then commissioner of public lands for the state of Washington, pointed out a stake which was later replaced by the galvanized iron pipe referred to, and stated that it was the corner in question. Section 16 was originally state school land, and it appears that, in 1922, Mr. Savidge was on the property in the course of investigations relative to certain tidelands, and that at that time he pointed out the corner to the witness Mathias E. Bloom. The testimony on this point was as follows:

"Q. At any rate, you went there with the State Land Commissioner? A. [Mr. Bloom] Yes. Mr. Savage asked me if I knew about this corner, because my brother had showed it to him before. Together we went over to look at it because my brother was dead and I was taking up the contract to buy that land. That is why he asked me if I knew about that corner. Q. That was an established corner in 1922? A. In 1922. The Court: Then you were showing the land commissioner, not the land commissioner showing you? A. He was showing it to me because my brother had showed it to him the year before. He asked me if I knew where the corner was. Together we went over there. He knew about the corner because my brother showed it to him. That was the land commissioner at that time, Mr. Savage."

The corner which Mr. Savidge showed the witness is identified as the point now marked by the galvanized pipe, but he obviously was pointing out something which the brother of the witness had shown to him (Mr. Savidge), and not something which he knew as state commissioner of public lands. (Mr. Savidge was still living at the time of the trial, but was not called as a witness.)

Whatever may be the effect of the common understanding of the owners of the other three government subdivisions among themselves, there was nothing before the court which precluded insistence by the owner of government lot 3 that the true corner be established; and the evidence supports the finding of the trial court as to the location of the true northwest corner of government lot 3. We therefore agree with the trial court that the northwest corner of government lot 3, which is also the southwest corner of

the northwest quarter of the southeast quarter, is as established by the survey made by the witness R. L. Rowe and as shown on defendant's exhibits Nos. 4 and 5 and on the map which is made a part of this opinion, and that, consequently, the actual ground which appellant claims to own is tract ABC as we have described it, the major portion of which is located in government lot 3.

■ Appellant's second contention is that, ever since the segregation of the tract described in the first paragraph of this opinion from the remainder of the northwest quarter of the southeast quarter of section 16, township 18 north, range 11 west, W. M., by the deed from Mathias E. Bloom and wife and Ida Loff to H. H. Schwartz, Grays Harbor county has carried the property so described on its records as "Tax No. 2"; that the records show that it has been assessed and taxed as such, and that all taxes have been paid thereon by appellant's predecessors in interest; that they have been in open, notorious, and adverse possession under a claim of title for more than seven years prior to the time Grays Harbor county acquired title thereto; and that, consequently, they have acquired title by adverse possession. In fact, the claim of adverse possession dates back to 1924, when Bloom and Loff acquired title to the northwest quarter of the southeast quarter.

We are not called upon to pass upon the question of whether the possession and use of tract B by appellant and his predecessors in interest is sufficient to constitute adverse possession under either the seven- or the ten-year statute of limitations. Rem. Rev. Stat., §§ 156, 786. We have held that a tax foreclosure wipes out any rights acquired by adverse possession. *Gustaveson v. Dwyer*, 78 Wash. 336, 139 Pac. 194; *Johnson v. Burgeson*, 25 Wn. (2d) 269, 170 P. (2d) 311. Appellant has no title or claim of interest in tract B which can be quieted against the claim and title of respondent.

■ As we have pointed out, there is a portion of tract ABC (to wit, tract C) which lies in the northwest quarter of the southeast quarter of section 16, township 18 north, range 11 west, W. M., and as to which respondent expressly

disclaims any interest; and appellant's title thereto should be quieted as against any claim of the respondent.

We have also pointed out that a portion of tract ABC, to wit, tract A, lies in government lot 4, section 16, township 18 north, range 11 west, W. M.; and, as respondent claims ownership only to government lot 3, we see no reason why appellant's title to tract A should not be quieted as against the respondent. (Whether his title can be successfully challenged by the owner of government lot 4, is not before us.)

Respondent, in his amended answer and cross-complaint, alleged his ownership of government lot 3, section 16, township 18 north, range 11 west, W. M., and asked that the north boundary line thereof be established, and that he be allowed damages in the amount of one thousand dollars for trespasses by appellant on government lot 3, and that appellant be restrained from further trespass thereon.

It will be noted that the controversy was broadened by this pleading, so that, instead of being limited to the ownership of tract ABC, it really involved a dispute concerning a strip 133 feet in width across the west half of the southeast quarter of section 16, township 18 north, range 11 west, W. M. If appellant was correct in his contention as to the location of the southwest corner of the northwest quarter of the southeast quarter (or the northwest corner of government lot 3), that strip would be in the northwest quarter of the southeast quarter and would belong to appellant; and, if respondent was correct in his contention as to the location of that corner, the strip would be in government lot 3, and would belong to respondent.

The respondent was entitled, on the pleadings and the evidence submitted, to have the location of the true line determined by the trial court, and to have his title quieted against any claims of appellant to government lot 3. The trial court was of the opinion that the appellant had trespassed on government lot 3, but that the damages were nominal, and gave respondent judgment for damages in the sum of one dollar. From this portion of the judgment,

respondent prosecutes a cross-appeal asking for damages in the sum of one thousand dollars.

Upon respondent's cross-appeal, we feel that he might well be entitled to damages in the sum of one hundred dollars for fence posts put in by him and removed by appellant, if they were actually put in along the north line of government lot 3. However, the testimony would indicate that respondent put his fence posts along the county road. While tract ABC has a frontage of some 150 feet along the county road, tract B has only about a 63-foot frontage thereon, and it does not seem reasonable to believe that respondent put in seventeen or twenty fence posts along a 63-foot frontage; so, if all the fence posts were along the road, he must have put posts along the frontage of tract C on the county road, and as to tract C he has disclaimed any interest. The location of the fence posts wrongfully removed by appellant has not been established with such certainty that other than nominal damages could be awarded.

Since Jessie's slough passes through both the northwest quarter of the southeast quarter, belonging to appellant, and government lot 3, belonging to respondent, appellant could, with propriety, buy or catch fish thereon north of the 133-foot strip in question; and respondent could, without interference from appellant, buy or catch fish thereon south of that strip. The trial court could not see, nor can we, how the fact that appellant may have bought six or seven thousand dollars worth of fish on that strip proved damages to the respondent in any amount. Appellant may have lost money on the fish so purchased, for all the evidence discloses.

Appellant asks for a new trial, because of newly discovered evidence and the insufficiency of the evidence to justify the affirmative relief granted respondent. The affidavits supporting the motion for a new trial, standing alone, would cast a very serious reflection on the accuracy and veracity of the respondent's principal witness; but the answering affidavits make a reasonable explanation of the matters referred to, and we cannot say that there was any

abuse of discretion by the trial court in refusing to grant a new trial on the grounds of newly discovered evidence.

■ What we have already said indicates our view that the evidence was sufficient to warrant the affirmative relief requested by and granted to the respondent. Appellant contends that the procedure for establishing lost corners (Rem. Rev. Stat., § 947 [P.P.C. § 13-1] *et seq.*) should have been followed. Neither party attempted to invoke that statute. Neither party would admit that the corner or the boundary was lost; each insisted that the corner contended for by him was the true corner. The trial court correctly decided that issue.

The judgment is modified to the extent of quieting title to tracts A and C in appellant as against any claims of the respondent, and it is in all other respects affirmed. The case is remanded, with instructions to the trial court to take such additional testimony, if any is required, as will enable it to accurately describe tracts A and C and to quiet title thereto in the appellant as against the respondent.

■ The relief accorded the appellant on this appeal would have been unacceptable to appellant and was not asked for in the court below. Had it been, it probably would not have been contested by the respondent. Neither the appellant nor the cross-appellant having prevailed in this court, each will bear his own costs on this appeal.

MALLERY, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.