[No. 34379. *En Banc.* October 23, 1958.]

JAMES P. SMITH, *Appellant,* v. FLOYD HENLEY *et al., Respondents.*[1]

[1]Reported in 330 P. (2d) 712.

*Montgomery, Montgomery & Purdue* and *John D. Blankinship,* for appellant.

*Dailey & Conroy,* for respondents.

ROSELLINI, J.—The dispute involved in this action concerns the right to the possession of a strip of land approximately 175 feet in width and a dwelling house located thereon. The plaintiff claims title by virtue of a tax deed; the defendants' claim is based upon the contention that the taxes were paid. The essential facts are not in dispute.

The description of the land conveyed by the tax deed is the west half of the southwest quarter of the southeast quarter of the southwest quarter of section 2, township 29 north, range 6 east W. M., Snohomish county, Washington. The defendants are contract vendees of the east half of the same quarter-quarter-quarter section.

When the east half was conveyed in 1929 by the owner of the entire quarter-quarter-quarter section, it was understood that the west boundary of the tract was a county road which ran north and south. This road was treated as the boundary by the grantor and by the grantee and his successors, to and including the defendants. A house was constructed on the tract in 1929 fairly close to the road. There are no improvements on the west half west of the county road. The defendants and their predecessors paid the taxes on the east half and on the house, which was listed by the assessor as an improvement to the east half. The original

grantor paid the taxes on the west "half" until 1947, when she decided to abandon it for taxes because she "knew it was short."

When the plaintiff acquired his tax deed, he had the tract surveyed and discovered that the house was situated on the west half and that, in fact, the true boundary between the east half and the west half was 175.6 feet east of the county road. He thereupon brought this ejectment action to quiet title to that portion of the west half lying east of the county road.

The trial court concluded that, since the house was taxed as an improvement to the east half, the assessor must have been laboring under the same misapprehension as the defendants and their predecessors, that the west boundary of the east half was the county road, and therefore must have assessed that portion of the west half which lay east of the county road as a part of the east half.

No issue on this appeal is made to any claim of title by adverse possession, as both parties agree that a tax foreclosure wipes out any rights acquired thereby. The plaintiff's contention is that the defendants' interest, however acquired, was cut off by the tax deed, and that the inference drawn by the trial court, that the taxes on the disputed land as well as on the improvements had been paid, was in error.

RCW 84.40.040 provides *inter alia*:

"The county assessor shall begin the preliminary work for each assessment not later than the first day of December of each year. He shall complete the duties of listing and placing valuations on all property by May 31st of each year, in the following manner, to wit:

"He shall actually determine as nearly as practicable the true and fair value of each tract or lot of land listed for taxation and of each improvement located thereon and shall enter fifty percent of the value of such land and of the total value of such improvements, together with the total of such fifty percent valuations, opposite each description of property on his assessment list and tax roll. . . ."

RCW 84.40.030, in so far as relevant to this action, provides:

" . . . In assessing any tract or lot of real property, the value of the land, exclusive of improvements, shall be determined; also, the value of all improvements and structures thereon, and the aggregate value of the property, including all structures and other improvements, excluding the value of crops growing on cultivated lands and the growing stock of nurserymen. . . ."

 If the procedure prescribed in these provisions was followed by the county assessor, which we must assume to be the fact since there was no evidence to the contrary, then the improvement actually located on the west half of the quarter-quarter-quarter section was listed and assessed as an improvement on the east half, and this could have been done only on the assumption that the land on which it stood was within the legal description of the east half. The plaintiff argues that the house could just as well have been assessed to the defendants as a severed improvement to the west half, since RCW 84.56.360 authorizes segregation of the improvements from the land and separate payment of the tax. But the flaw in this argument is that the statute authorizes such segregation only where buildings, structures, or improvements are held in separate ownership from the fee. There has never been any claim of such separate ownership in this case.

On the face of the tax statements received by the defendants the improvements are listed as belonging to the east half, and there is nothing in the record to support an inference that a segregation was intended.

RCW 84.64.180 provides that a real property tax judgment shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the tax has been paid, or the real property was not liable to the tax.

 In *Berry v. Pond*, 33 Wn. (2d) 560, 206 P. (2d) 506, we held that, where taxes are paid under an inaccurate description of the land actually assessed, that fact may be shown as a defense to an action to quiet title brought by the holder of a tax deed describing the land so taxed. We stated:

"It is the *fact* of payment of the taxes on the land occupied, not the description used in the tax receipt, that is determinative of the issue here."

██ ██ The burden, of course, is upon the defendants to show that the taxes were actually paid. As the trial court observed in rendering its decision in this matter, the records of the assessor were in a state of some confusion, indicating that after the tax sale, the assessment on the house was transferred from the east half to the west half, and then, by way of "correction," transferred back to the east half. In view of the fact that the land east of the county road had been improved and continuously occupied by the owners of the east half and regarded by all concerned as a part of the tract and that the house located west of the true boundary was nevertheless assessed by the county as a part of the east half, the trial court drew the only reasonable inference, that the assessor included the whole of the improved land in making his assessment.

██ By the express reservation contained in RCW 84.64.180, it was made manifest that it was not the intent of the legislature to subject land on which taxes have been paid to foreclosure, or to deprive one in possession of the right to set up his payment as a defense to an action to oust him. It is urged that the security of tax titles will be endangered if an error in description may be shown in establishing such a defense; but we see no valid reason why an error in description may not be shown to prove that payment was made, any less than other errors or acts of the county treasurer can be set up to show that a bona fide attempt to pay was made. That a tax deed may be invalidated on a showing that the owner made a bona fide attempt to pay his taxes and was prevented from doing so by the act of the county treasurer is well settled. *Pierce County v. Newbegin,* 27 Wn. (2d) 451, 178 P. (2d) 742; *Nalley v. Hanson,* 11 Wn. (2d) 76, 118 P. (2d) 435; *Bullock v. Wallace,* 47 Wash. 690, 92 Pac. 675. See, also, Comment, 23 Wash. L. Rev. 132.

██ It is true that the mistake was that of the defendants and their predecessors as well as the assessors, but it was

an honest mistake, based upon a reasonable assumption, and, as we stated in *Pierce County v. Newbegin, supra*, "it is not the policy of the law that the owner should lose his land through excusable mistake."

■ Upon the evidence, the court was justified in concluding that the defendants had sustained the burden of proving that the taxes on the disputed land had been paid.

The judgment is affirmed.

MALLERY, DONWORTH, FINLEY, OTT, and HUNTER, JJ., concur.

HILL, C. J. (dissenting)—I dissent. This is even more of a hardship case than the majority opinion indicates. I can concede that the trial court and the majority may have reached a just result. I cannot agree, however, that the controlling principle of law applicable to cases involving the validity of tax titles is our statement, in *Pierce County v. Newbegin* (1947), 27 Wn. (2d) 451, 178 P. (2d) 742, that no owner of land should lose it through excusable mistake (quoted in next to last paragraph of majority opinion). That may be justice, but it is not the law.

The applicable law enacted by the legislature is RCW 84.64.180:

"Deeds as evidence—Estoppel by judgment. Deeds executed by the county treasurer shall be *prima facie* evidence in all controversies and suits in relation to the right of the purchaser, his heirs and assigns, to the real property thereby conveyed of the following facts: First, that the real property conveyed was subject to taxation at the time it was assessed, and had been listed and assessed in the time and manner required by law; second, that the taxes were not paid at any time before the issuance of deed; third, that the real property conveyed had not been redeemed from the sale at the date of the deed; fourth, that the real property was sold for taxes, interest, and costs, as stated in the deed; fifth, that the grantee in the deed was the purchaser, or assignee of the purchaser; and sixth, that the sale was conducted in the manner required by law.

"Any judgment for deed to real property sold for delinquent taxes, except as otherwise provided in this section, shall estop all parties from raising any objections thereto,

or to a tax title based thereon, which existed at or before the rendition of such judgment, and could have been presented as a defense to the application for such judgment in the court wherein it was rendered. As to all such questions the judgment itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the tax has been paid, or the real property was not liable to the tax. [1925 ex.s. c 130 § 127; RRS § 11288.]"

Inasmuch as I disagree with the majority as to the inferences to be drawn from certain evidence, and as to the applicability of the quoted statute to certain circumstances in the case, it seems necessary to state the evidence in some detail.

The plaintiff acquired title, through a tax deed from the treasurer of Snohomish county, to the west half of the southwest quarter of the southeast quarter of the southwest quarter of section 2, township 29 north, range 6 east W. M., Snohomish county, Washington. This would be the west half of a tract, theoretically ten acres in area but actually somewhat less. The exact area is not significant as the plaintiff is entitled to the west half of the tract, whatever its area, unless the taxes had, in fact, been paid on the portion of the west half claimed by the defendants.

The defendants are acquiring, under a contract of purchase, the east half of the west half of the south half of the southeast quarter of the southwest quarter of section 2, township 29 north, range 6 east W. M., Snohomish county, Washington. This would be the east half of the same tract. (This contract is not in evidence. I must rely for the description on a statement concerning the title insurance, to which I will refer later.)

To avoid repetition of the legal description, I shall use the word "tract," when referring to the southwest quarter of the southeast quarter of the southwest quarter of section 2, township 29 north, range 6 east W. M., except as reference is hereafter made to certain "Red Tracts."

The facts relative to the division of the tract are that it was last owned as an entirety by Ella M. Johnson, who

acquired it in 1926. We assume that it was her separate property, as she testified that "It was probated to me."

There is a county road, forty feet in width, which runs north and south through the tract—much closer to the west line than to the east line. The evidence indicates that it is only 106.2 feet from the center line of the road to the west line of the tract; and that it is 175.6 feet from the center line of the road to the line which would have divided the west half of the tract from the east half. This 175.6 feet, less twenty feet for half of the county road—a strip 155.6 feet in width—is the land in controversy. These figures check out with the two maps of section 2, township 29, range 6 E. W. M., in evidence.

| | As shown by Exhibit C: | As shown by Exhibit F: | If standard section, would be: |
|---|---|---|---|
| South line of S.W.⁴ section 2, T. 29, R. 6.... | 2255.06 | *2258.6 | 2640 |
| South line of S.E.⁴ of S.W. ................ | 1127.53 | 1129.3 | 1320· |
| South line of S.W.⁴ of S.E.⁴ of S.W.⁴, the "tract" ............... | 563.76 | 564.65 | 660 |
| South line of west half of tract ................ | 281.88 | 282.32 | 330 |
| South line of east half of tract ................ | 281.88 | 282.33 | 330 |

*(This is the figure established by a former court proceeding to which the defendants made some reference as establishing the extent of the shortage from standard in this half section.)

Mrs. Johnson's first division of the property was in 1929, when she entered into a contract with Burr Smith (contract is not in evidence) to sell him all of the tract east of the county road. Smith built the house, now on the premises, in 1929. Both of them testified, and both agreed, that she sold him everything east of the county road, and that the county road was the dividing line between what she sold and what she retained. He abandoned the place in a year or two, and Mrs. Johnson was again owner of the entire tract.

She again divided the property, in 1940, selling to Myron Henderson the portion east of the road. Whether this was a cash sale or a contract is not clear from the record, and there is no deed or contract in evidence. It is, however, very clear from the testimony that the land Mrs. Johnson intended to sell and the land the Hendersons intended to buy was bounded on the west by the county road.

In her testimony, Mrs. Johnson continually refers to the portion of the tract east of the county road as the east half, and the portion west of the county road as the west half; but she "figured" the so-called west half was short "between two and three acres, and perhaps more than that. It was very short." She quit paying taxes on the west half and abandoned it in 1947.

The Hendersons sold in 1950 to Wallace G. Mackie who bought, without any particular investigation, for the sole purpose of selling on a contract to Floyd Henley. The Henleys took possession directly from the Hendersons and are still in possession, as purchasers under their contract with Mackie.

No contract or deed in the chain of title from Mrs. Johnson to the Henleys is a part of the record in this case. The closest we come to any knowledge of the legal descriptions employed in the transfer of these tracts is Mr. Henley's testimony that he "paid taxes on the same description that's on my title insurance." That description, as he read it into the record was, "the east half of the west half of the south half of the southeast quarter of the southwest quarter of section 2, township 29, range 6," which, as we have already indicated, is another way of describing the east half of the S.W.⁴ of the S.E.⁴ of the S.W.⁴ of section 2, township 29 north, range 6 E. W. M.

There is here, as the majority opinion indicates, no question of adverse possession. From Mrs. Johnson to the Henleys, all parties to the chain of title to the east half of the tract were agreed that the county road was the west line of the property which Mrs. Johnson sold; and that she intended, by whatever description she used, to sell and convey all of the tract lying east of the road, which would, in

fact, be all of the east half of the tract—some 281.88 feet in width measured along the south line, and 155.6 feet of the west half of the tract measured along its south line.

The only issue to be determined is whether the Henleys (the respondents here) and their predecessors in interest paid the taxes on the 155.6 feet of the west half, which lies east of the county road.

The statute states that the tax deed to the west half of the tract, under which the plaintiff claims title and the right to possession, is *prima facie* proof that the taxes were not paid thereon. The statute further states that the judgment in the tax foreclosure proceeding cannot be collaterally attacked "except in cases where the tax has been paid, or the real property was not liable to the tax." RCW 84.64.180 (See page one of this dissent where RCW 84.64.180 is set forth in full.)

The plaintiff made a *prima facie* case when he offered the tax deed to the west half of the tract in evidence, and established that he took title from the grantee named in that deed. The burden was then upon the defendants to prove that the taxes on the portion of the west half of the tract, lying east of the county road and to which they claim ownership, had been paid.

The only tax receipts in evidence show that taxes were paid on "RT-12B- E½ SW¼ SE¼ SW¼ Section 2, Township 29, Range 6."

The "RT-12B," on the tax statement, is significant. It was explained by a deputy from the county assessor's office that "R.T." meant "Red Tract," the numbers on certain segregated tracts in the office records being in red. Exhibit F is a copy of a map from the assessor's office of section 2, township 29, range 6 east W. M. On it, 12B is the number, in red, given to the east half of the SW⁴ of the SE⁴ of the SW⁴ of section 2, township 29, range 6 east W. M., and 12 is the number, in red, given to the west half thereof. The county road is shown, and, very clearly, the portion of the west half of the SW⁴ of the SE⁴ of the SW⁴, which lies east of the county road, is in "Red Tract 12" and not in "Red Tract 12B."

It was testified that it was the taxes on "Red Tract 12," which were delinquent and were foreclosed and the property sold to the plaintiff's grantor. It was conceded that there had been confusion in the assessor's records, as to whether the improvements were on "Red Tract 12," or on "Red Tract 12B," but no suggestion as to confusion as to the land included in each red tract. The plaintiff before this court waived all claim to the improvements.

The defendants offered no evidence to overcome the *prima facie* presumption that taxes on the west half of the tract had not been paid; except the fact that they had paid taxes on the house which was located thereon, the improvements having been shown on the tax statement as being on the east half of the tract, or "RT 12B."

The segregation in the assessor's office, showing that the land in the west half of the tract lying east of the county road was in "Red Tract 12," is conclusive, so far as I am concerned, that taxes were not paid on any part of the land covered by the tax deed.

Under the applicable law, the plaintiff is the owner of the west half of the southwest quarter of the southeast quarter of the southwest quarter of section 2, township 29 north, range 6 east W. M., Snohomish county, Washington, and is entitled to prevail in his ejectment action against the defendants, and to have his title thereto quieted against them. I would reverse the trial court's order of dismissal, and direct judgment for the plaintiff.

WEAVER and FOSTER, JJ., concur with HILL, C. J.