[No. 2669-1.  Division One.  June 30, 1975.]

ABIE LABEL et al, *Appellants,* v. JACK C. CLEASBY et al, *Respondents.*

*Earl E. Yates,* for appellants.

*Warner, Pierce & Peden* and *Leo J. Peden,* for respondents.

SWANSON, J.—This appeal is a contest to quiet title in certain realty between one claiming title through adverse possession who believed he was paying the taxes on the land in question, and one claiming title through purchase of a tax deed. The sole issue presented is whether the trial court erred in quieting title in the holder by adverse possession.

Label, purchaser of the tax deed, sued Cleasby to secure title to a 97.66-foot strip of land.[1] The facts as set forth in the findings of the trial court are not in dispute. In 1913, John Anderson deeded certain realty to Cleasby, and both Anderson and Cleasby believed that the legal description included the strip of land here in dispute and that the boundary lay along an existing fence. Thus, Cleasby believed that he was paying the real estate tax on all of the land he was farming which extended to the fence and included the disputed property. Cleasby did not discover that the legal description did not include the disputed property until Label purchased a tax title deed to the property; however, Cleasby did have title to the property by adverse possession.

Label acquired title to property adjoining the disputed property as follows: In 1947, Cleasby's grantor, John Anderson, sold the adjoining land to Workman, one of Label's predecessors in interest. In 1956, Workman deeded the property to Bulzomi; in 1957, Workman and Bulzomi platted a portion of the property as "Montagna Park." Workman and Bulzomi both honored the fence as the true

---

[1]For convenience of reference, appellants are referred to herein as "Label" and respondents are referred to as "Cleasby."

boundary of Cleasby's adjoining property. In October 1962, Bulzomi deeded to Label property not used to form Montagna Park, but the deed did not include the disputed strip of property. As a result, taxes on the disputed strip were not paid by anyone. Thereafter, Label lived on his property, knowing that Cleasby was farming the land to the fence, including the disputed property, and knowing for a long period of time that Cleasby honestly believed that he owned the strip of land at issue.

On August 15, 1969, King County commenced a tax foreclosure action which included the disputed property. Subsequently, a tax deed to the property was purchased by one Bertil Granberg on December 5, 1969. Cleasby received no notice of the tax foreclosure proceedings and neither King County nor Label attempted to notify him. On December 15, 1969, Label, with full knowledge that Cleasby possessed the land in question, leased the property from Granberg and, on December 18, 1969, entered into an option to buy it. It was not until early 1970 that Cleasby knew anything of these transactions. On December 23, 1971, Label received a deed to the disputed property from Granberg and thereafter commenced this action to force Cleasby off the property. Under the circumstances thus presented, the trial court ruled to quiet title in Cleasby. Label appeals.

■  In challenging the trial court's decision, Label relies on the general rule that a tax foreclosure is a proceeding in rem which vests in the purchaser of a tax deed, or in his assignee, a new title which is superior to any prior possessory rights, however exclusive or adverse, directing our attention to *Rushton v. Borden*, 29 Wn.2d 831, 190 P.2d 101 (1948); *Johnson v. Burgeson*, 25 Wn.2d 269, 170 P.2d 311 (1946); *Harmon v. Gould*, 1 Wn.2d 1, 94 P.2d 749 (1939); *Bassett v. Spokane*, 98 Wash. 654, 168 P. 478 (1917); *Wilson v. Korte*, 91 Wash. 30, 157 P. 47 (1916); *Gustaveson v. Dwyer*, 78 Wash. 336, 139 P. 194 (1914); *Hanson v. Carr*, 66 Wash. 81, 118 P. 927 (1911). In this connection, Label points out that RCW 84.64.180 provides that a judgment for a tax deed "shall be conclusive evidence of its regularity

and validity in all collateral proceedings, *except in cases where the tax has been paid, or the real property was not liable to the tax.*" (Italics ours.)

Cleasby argues that disputes between holders by adverse possession and holders by tax deed are resolved in Washington by a consideration of the relative equities favoring each of the parties, but we reject such a broad statement.[2] It is evident from an examination of the case law, however, that a "third exception" has been recognized in addition to those stated in the above quoted statute, namely, a bona fide attempt by the taxpayer to pay the taxes, which may, in appropriate circumstances, defeat the interest claimed by one holding a tax deed. *See Bornstein Sea Foods, Inc. v. Whatcom County*, 55 Wn.2d 44, 345 P.2d 601 (1959); *Smith v. Henley*, 53 Wn.2d 71, 330 P.2d 712 (1958); *Berry v. Pond*, 33 Wn.2d 560, 206 P.2d 506 (1949); *Pierce County v. Newbegin*, 27 Wn.2d 451, 178 P.2d 742 (1947); *Nalley v. Hanson*, 11 Wn.2d 76, 118 P.2d 435 (1941); *Schultz v. Kolb*, 189 Wash. 187, 64 P.2d 79 (1937). The facts of the cited cases, however, indicate that relief under the third exception has been granted only in cases where the action of a public official has frustrated payment of the tax.

Cleasby relies primarily upon *Smith v. Henley, supra,* and *Berry v. Pond, supra,* both of which recognize the principle that a tax deed may be invalidated by a showing that the taxpayer made a bona fide attempt to pay his taxes. As the court characterized the exception in *Smith* at page 75:

---

[2]For example, Cleasby emphasizes that he had no notice of the tax foreclosure proceeding and suggests that a tax deed may not divest title of a person in possession of property who receives no such notice, citing *Buty v. Goldfinch*, 74 Wash. 532, 133 P. 1057 (1913). In *Buty,* however, it appears that the one in possession was also the record title holder who would be entitled to notice of a foreclosure proceeding under the present statute, RCW 84.64.050. *Buty* involved the *jurisdiction* of the court over the tax foreclosure proceeding, not the *"equities"* of the one in possession of the subject property. *See Kupka v. Reid,* 50 Wn.2d 465, 312 P.2d 1056 (1957); *Carlson v. Stair,* 3 Wn. App. 27, 472 P.2d 598 (1970).

That a tax deed may be invalidated on a showing that the owner made a bona fide attempt to pay his taxes and was prevented from doing so by the act of the county treasurer is well settled.

(Citations omitted.) Cleasby characterizes *Berry*, which he argues was "approved" in *Smith*, as a case in which a taxpayer successfully defended his title against the holder of a tax deed because an error in the legal description of his property reasonably caused him to *believe* that he was paying the taxes. Apparently Cleasby adopts this characterization from language used in the dissenting opinion in *Berry* at page 567, and in *Palin v. Sherman*, 38 Wn.2d 806, 807, 232 P.2d 105 (1951), both written by Justice Hill. Thus, Cleasby argues that the trial court's findings here clearly establish his reasonable belief that he was paying taxes on the disputed property such that he must be deemed to have made a bona fide attempt to pay his taxes sufficient to defeat Label's tax deed.

We disagree. Our state Supreme Court indicated in both *Berry* and *Smith* that its decision in each case rested upon its conclusion that the taxes on the disputed property in question had been paid *in fact*. Therefore, both cases are distinguishable from this case because of the trial court's finding of fact No. 6 which states in part that "the taxes on the disputed property were not paid by anyone." This finding is undisputed, and there is no contention that the property was not liable to the tax. Thus, this case does not fall within either of the statutory exceptions to the priority of a tax title. RCW 84.64.180. Moreover, it is undisputed that there was no error on the part of a public official which prevented the payment of taxes and, accordingly, this case does not fall within the recognized "third exception." *See Bornstein Sea Foods, Inc. v. Whatcom County*, *supra*; *Pierce County v. Newbegin*, *supra*; *Nalley v. Hanson*, *supra*. If there was error here which prevented the payment of tax, it was purely the error of the taxpayer who, in the absence of remedial legislation, must be deemed to bear the risk of a faulty legal description contained in his deed.

No amount of good faith misunderstanding on the part of a property owner as to the accuracy of the legal description in his deed, or bad faith on the part of one who purchases a tax deed, can bring the owner within the protection against tax foreclosure afforded by the three recognized exceptions. If we were to permit the defeat of a tax deed under the facts of this case, we would be approving the "fourth exception" perceived by Justice Hill in his dissenting opinion in *Berry v. Pond, supra. See Security of Tax Foreclosure Titles, Chapter 2*, 25 Wash. L. Rev. 83 (1950).

In *Palin v. Sherman, supra*, the court apparently was urged to recognize such a fourth exception based upon a taxpayer's reasonable belief that he was paying his taxes despite the absence of any error by a public official. The appellants there relied upon *Berry v. Pond, supra*, and so the respondents invited the court to overrule that case. In affirming judgment for the holders of the tax title, the *Palin* court stated at pages 807-08:

> However, it is not necessary to accept that invitation. The court there found, from the facts and circumstances, that Pond had paid the taxes on the sixty-foot strip occupied by him; and that was declared to be decisive of the case. There is here no finding of any fact from which it could be concluded that the appellants had paid the taxes on the six-foot strip occupied by them.

In this case, as we have noted, we are aided by the trial court's unchallenged finding that Cleasby had not paid the taxes on the 97.66-foot strip of land which he occupied and held by adverse possession. The property was liable to tax at the time of the foreclosure sale and there was no error by a public official. *Palin* is controlling.

The judgment is reversed.

FARRIS and JAMES, JJ., concur.

Petition for rehearing denied January 20, 1976.

Review by Supreme Court pending February 23, 1976.