[No. 29383. Department Two. October 27, 1944.]

THE PORT OF PORT ANGELES, *Appellant*, v. J. M. DAVIS *et al.*, *Respondents.*[1]

*J. W. Lindsay* and *Shank, Belt, Rode & Cook*, for appellant.

*John M. Wilson*, for respondents.

BEALS, J.—The plaintiff in this action, Port of Port Angeles, is and since November, 1922, has been a port district, organized pursuant to law, its boundaries being coextensive with the boundaries of Clallam county. January 28, 1943, plaintiff filed its complaint in this action, naming Mr. and Mrs. J. M. Davis, Mr. and Mrs. R. L. Lowry, and Clallam county, as defendants.

In its second amended complaint, plaintiff, after alleging its organization and existence as a public corporation, alleged the adoption by plaintiff of a comprehensive scheme of harbor development for the port district of Port Angeles, and that July 1, 1925, at a special election held throughout the port district pursuant to law, the electors of the district voted that certain real estate within the port district be

[1]Reported in 152 P. (2d) 614.

acquired by plaintiff for port purposes; that the property directed to be acquired included lots 4 to 10, inclusive, in block 35, north of Marine Drive, of the plat of the townsite of Port Angeles; that September 15, 1925, the then owners of the tract of real estate described as that part of lot 6, in block 35, which lies north of an established street called Marine Drive, of the townsite of Port Angeles, conveyed the property by warranty deed to the plaintiff in this action, who ever since has been the owner in fee simple of the property; that plaintiff, December 9, 1925, paid the treasurer of Clallam county the taxes assessed against the described real estate for the year 1924, and received a treasurer's receipt showing full payment of the tax; that plaintiff, March 13, 1926, paid to the county treasurer taxes levied by the county for the year 1925 against the property described, and received the treasurer's official receipt for the same; that at the time of the payment referred to there were no unpaid taxes or tax liens against the described property; that September 10, 1932, the then treasurer of Clallam county issued a certificate of delinquency, setting forth alleged delinquent tax liens against a large number of tracts of land in Clallam county listed on the 1925 tax rolls, which certificate wrongfully listed a portion of lot 6, block 35, above described, as subject to delinquent taxes for the years 1924 and 1925, and naming the city of Port Angeles as owner thereof, the listing of the alleged delinquent tax reading as follows:

"Line 21—City of Port Angeles, Street and North 73.25 x 47.38 x 50 feet of Lot Six (6), Block 35—years 1924 $25.15 and 1925 $125.89, Penalty, interest and costs $93.13. Total amount of County Certificate $244.17."

Plaintiff further alleged that later a notice and summons in a tax foreclosure proceeding instituted by the county was published, purporting, *inter alia,* to foreclose delinquent taxes against a tract of land described as follows: "City of Port Angeles, street and north 73.25 x 47.38 Lot 6 Block 35 $244.17"; and that November 19, 1932, a judgment and order of sale was entered by the superior court, foreclosing many alleged tax liens against various tracts of land in Clallam

county, including the tax above referred to, which was described in the judgment as follows:

"City of Port Angeles—Street and North 73.25 x 47.38 x 50 feet of Lot Six (6), Block Thirty-five (35), Amount of $244.17, accrued interest $4.88, amount of Judgment $249.05";

that thereafter the above described property, which was a portion of the subject matter of the tax foreclosure, was by the county treasurer sold to Clallam county, the treasurer issuing his deed to the county for many tracts of land, among them the tract described as last above set forth; that the deed to the county was regularly filed for record in the office of the county auditor, December 30, 1932.

Plaintiff further alleged that December 10, 1938, at a sale by the county of lands acquired by tax foreclosure, the county, by an executory contract, undertook to convey to defendants J. M. and Nellie M. Davis the portion of lot 6 as above described, and that, during the month of January, 1939, the defendants Davis entered into possession of a portion of the land described, and have ever since maintained possession thereof, claiming under and by virtue of the alleged contract with Clallam county.

By paragraph 14 of its amended complaint, plaintiff alleged that neither it nor any of its officers or employees had notice of the alleged tax foreclosure proceedings above referred to until January 11, 1943.

By subsequent paragraphs of its complaint, plaintiff alleged that the taxes sought to be foreclosed as above set forth were wrongfully and unlawfully levied, there being in fact no such taxes due against the property or any portion thereof; that no right existed to foreclose against the property above described any lien for delinquent taxes whatsoever; that all taxes against the property had been fully paid, including the taxes for 1924 and 1925; and that the purported tax foreclosure was null and void.

Plaintiff prayed for a decree holding null and void the purported tax foreclosure against the property described, removing the apparent cloud against plaintiff's property caused by the tax foreclosure and contract of sale to de-

fendants, and requiring that immediate possession of the premises be delivered to plaintiff. Plaintiff also prayed for general relief.

A second cause of action was stated in the complaint, with which we are not concerned.

The defendants moved to strike paragraph 14 from the second amended complaint, for the reason that the allegations therein contained were sham and frivolous and inconsistent with allegations contained in plaintiff's first amended complaint. Defendants also demurred to plaintiff's first cause of action, upon the ground that the action was not commenced within the time limited by law, and upon the further ground that the first cause of action failed to state facts sufficient to entitle plaintiff to any relief. The court granted defendants' motion to strike paragraph 14, and sustained defendants' demurrer to plaintiff's first cause of action.

Plaintiff's second cause of action having been confessed, and plaintiff having elected to stand upon its first cause of action as set forth in its second amended complaint, and having refused to plead further, judgment was entered dismissing plaintiff's first cause of action and granting plaintiff the relief prayed for in its second cause of action. From that portion of the judgment dismissing its first cause of action, plaintiff has appealed, assigning error upon the order of the court striking paragraph 14 from its complaint, and sustaining defendants' demurrer; error also being assigned upon the entry of judgment dismissing plaintiff's first cause of action.

For the purposes of this appeal, it is admitted that the taxes against the real estate which the tax deed purports to convey, levied for the years 1924 and 1925, were paid before delinquency by the owner of the property, and that, in so far as that property is concerned, the alleged taxes for 1924 and 1925, upon which the tax foreclosure proceeding was based, were never due or delinquent against the property in question.

The sole question, then, to be determined is whether the tax deed bearing date December 20, 1932, and recorded De-

cember 30th following, was, at the time of the institution of this action, subject to attack as based upon a tax foreclosure on account of taxes which were never either due or delinquent against the property in question.

Our view of the law applicable to the admitted facts renders unnecessary discussion of appellant's assignment of error based upon the order of the court striking paragraph 14 of the first cause of action in appellant's second amended complaint.

■ Rem. Rev. Stat., § 162 [P. C. § 8167], reads in part as follows:

"Actions to set aside or cancel the deed of any county treasurer issued after and upon the sale of lands for general, state, county or municipal taxes, or for the recovery of lands sold for delinquent taxes, must be brought within three years from and after the date of the issuance of such treasurer's deed  . . ."

Respondents contend that this action is barred by the limitation established by the section of the code quoted.

This section refers to actions to set aside or cancel tax deeds "issued after and upon the sale of lands for general, state, county or municipal taxes," or to actions "for the recovery of lands sold for delinquent taxes." In the case at bar, the taxes against the land in question for the years 1924 and 1925 were, prior to delinquency, paid in full by appellant. That payment completely extinguished such taxes and all tax liens therefor. Thereafter, there were no taxes delinquent for the years in question for which the real estate could be sold. As to the years 1924 and 1925, the property could neither be sold for taxes nor "sold for delinquent taxes," since there were no delinquent taxes. A tax deed based upon such a purported foreclosure could convey no title, as it rests upon no foundation in law.

Respondent cites many of our cases in which, pursuant to the section of the statute above quoted, tax deeds based upon tax foreclosures, irregular in some particulars, were held unassailable after three years from the date of execution. These decisions range from the case of *Huber v. Brown,* 57 Wash. 654, 107 Pac. 850, to *White v. Gehrman,*

1 Wn. (2d) 504, 96 P. (2d) 453.  Our attention, however, has been called to no decision of this court in which it appeared that the bar of the statute was upheld when the foreclosure was based upon taxes for a year or years for which the taxes actually levied had been fully paid.

Section 162, *supra,* assumes as a basis for its scope the levy of a lawful tax against real property.  After the valid levy of a tax for a particular year and the payment of that tax, there is no legal basis whatever for the subsequent levy of another tax against the property for the same year.  Any purported tax sought to be imposed pursuant to such a levy is void.  No question is here presented concerning a tax levied against omitted property or pursuant to any reassessment.

Neither in the instant case are we concerned with the question of adverse possession, either with or without color of title.

Among other authorities, respondents rely upon the case of *Savage v. Ash,* 86 Wash. 43, 149 Pac. 325, in which it was held that § 162 operated to defeat an action to set aside a tax deed based upon allegations of fraud.  After discussing the power and intent of the legislature in connection with the statute in question, the court called attention to the fact that the statute was manifestly in aid of the taxing power, prompt payment of taxes being necessary to an economical administration of government.  This reasoning applies to taxes payable pursuant to a lawful levy and not to such a tax as that with which we are here concerned, which never had any lawful basis upon which to rest.  The language of the opinion in the case cited which is strongly relied upon by respondents must be considered in connection with the nature of the questions which were presented in the case in which the language was used.  The general language used is not here controlling.

In the case of *Smith v. Jansen,* 43 Wash. 6, 85 Pac. 672, which was decided prior to the enactment of § 162, this court affirmed a judgment of the superior court quieting the title of the owner of a tract of real estate as against the holder of a tax deed.  It was admitted that the taxes for

which the premises were sold had in fact been paid to the county treasurer long before the purported tax foreclosure and sale. This court considered § 114 of the revenue act of March 15, 1897 (Laws 1897, p. 190), which provided, *inter alia,* that a tax deed executed by the county treasurer should be *prima facie* evidence "that the taxes or assessments were not paid at any time before the issuance of deed." It was held that the *prima facie* presumption was overcome by the admission that the tax had been in fact paid, and that the property owner could show this fact in a collateral proceeding. The opinion concludes as follows:

"The foreclosure of a tax lien by constructive service, especially against a resident of the state, is a harsh remedy at best. This court has often held that the procedure is justified, because the public revenues must be paid, and because the property owner is chargeable with notice that taxes are levied against his property annually, and that the property will be sold in regular course of law, if the taxes are not paid. The foreclosure cannot take place for a number of years after the tax is levied, and if the property owner neglects the payment of his taxes for so long a time, he is in no position to complain of the forfeiture. None of these reasons apply in this case. The property owner has paid his taxes and discharged his obligations to the state. He had no reason to expect that proceedings would be taken against him or his property, and he was not required to be ever on the lookout lest some negligent or corrupt official should cause or suffer his property to be sold for a tax that had long since been paid."

The case last referred to was cited with approval in the later case of *Puget Sound Nat. Bank v. Biswanger,* 59 Wash. 134, 109 Pac. 327.

In the two cases last cited, no question was presented in connection with the running of the statute of limitations established by § 162, *supra,* but the quotation from the *Smith* case is pertinent to the question here presented.

Rem. Rev. Stat., § 162, does not apply to an action to set aside a tax deed or to recover land sold for taxes in a tax foreclosure proceeding based upon an alleged delinquent tax, when *in fact* the taxes for which the land was purportedly sold had been seasonably paid.

Our view upon the question above discussed renders unnecessary any discussion of other questions argued by appellant.

The judgment appealed from is reversed, with directions to the trial court to overrule the demurrer to appellant's first cause of action.

SIMPSON, C. J., BLAKE, ROBINSON, and MALLERY, JJ., concur.