# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2016 JUN -6 A 9: 14

U.S. BANK NATIONAL ASSOCIATION,
as Trustee for Structured Asset
Mortgage Investments II Inc. Bear
Stearns ALT-A Trust, Mortgage
Pass-Through Certificates, Series
2006-3,

        Appellant,

        v.

NORTH AMERICAN TITLE COMPANY,

        Defendant,

CV JOINT VENTURES, LLC,

        Respondent,

STEVEN SHELLEY AND JANE DOE
SHELLEY; THE UNITED STATES OF
AMERICA; AND JOHN AND JANE
DOES, I THROUGH V, OCCUPANTS
OF THE SUBJECT REAL PROPERTY,
AND ALL OTHER PERSONS OR
PARTIES UNKNOWN, CLAIMING ANY
RIGHT, TITLE, INTEREST, LIEN OR
ESTATE IN THE PROPERTY HEREIN
DESCRIBED,

        Defendants.

No. 74843-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: June 6, 2016

TRICKEY, J. — U.S. Bank appeals the trial court's dismissal of its action to quiet title to land that CV Joint Ventures, LLC holds pursuant to a tax deed. Because the payment of taxes may be shown to defeat a tax deed, and because it is conceivable that U.S. Bank and its predecessors paid taxes on a portion of the land in dispute, the trial court erred when it dismissed U.S. Bank's claims under CR 12(b)(6). We reverse and remand.

## FACTS

U.S. Bank's complaint establishes the substantive facts. This case involves two of three adjacent parcels located in Edgewood, Washington. Steven Shelley originally owned all three parcels, which are identified by Pierce County Auditor's parcel numbers as follows: 0420232039 (Parcel A), 0420242069 (Parcel B), and 0420232068 (Parcel C).

In January 2006, Shelley borrowed $910,000 from Stonecreek Funding Corporation. As collateral for the loan, Shelley executed a deed of trust. It was the intent of the originating lender and Shelley that the deed of trust encumber Shelley's primary residence (the Shelley house). Because the Shelley house is located on both Parcels B and C, the parties intended that the deed of trust encumber both Parcels B and C. However, the deed of trust only encumbered Parcel B.

North American Title Company served as the escrow company and escrow agent that closed the loan transaction. The originating lender instructed North American Title Company to obtain a lender's title policy of insurance on all three parcels. It also instructed North American Title Company to ensure that the deed of trust encumbered, at a minimum, Parcels B and C.

On December 4, 2009, Pierce County foreclosed on Parcel C and sold it to CV Joint Ventures at a tax foreclosure sale for $15,100. The assessed value for Parcel C at the time of the tax foreclosure was $53,500. Because the deed of trust did not encumber Parcel C, as the parties intended, U.S. Bank was not notified of the tax foreclosure.

2

The following year, in August 2010, Shelley defaulted on the loan and U.S. Bank commenced nonjudicial foreclosure proceedings on the deed of trust. U.S. Bank successfully bid at the trustee's sale and obtained a trustee's deed for Parcel B.

At all relevant times, Parcel C has been taxed as unimproved, vacant land. Parcel B, at all relevant times, has been taxed as improved land—including both the land and the Shelley house.

On or about April 24, 2012, the attorney-in-fact for U.S. Bank was notified that the Shelley house is actually located on both Parcels B and C.

On April 21, 2015, U.S. Bank commenced this action against North American Title Company, CV Joint Ventures, Shelley, and others. Against CV Joint Ventures, U.S. Bank sought to quiet title to Parcel C by reformation of the deed of trust and the trustee's deed based on mutual mistake or scrivener's error.

CV Joint Ventures moved under CR 12(b)(6) to dismiss the action against it. After hearing argument on the matter, the trial court granted this motion. U.S. Bank subsequently moved for reconsideration, which the trial court denied.

Thereafter, CV Joint Ventures moved the trial court to release the lis pendens that U.S. Bank had filed with its suit. CV Joint Ventures also moved for attorney fees and costs. The trial court granted these motions.

This appeal followed.

## ANALYSIS

U.S. Bank argues that the trial court improperly dismissed its claims for quiet title and reformation. It asserts that it properly pleaded these claims to property

that the relevant parties intended to be encumbered by the deed of trust and for which taxes have been paid. We agree.

"Under CR 12(b)(6), dismissal is appropriate only if 'it appears beyond doubt that the plaintiff cannot prove any set of facts which would justify recovery.'" Burton v. Lehman, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005) (internal quotation marks omitted) (quoting Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 330, 962 P.2d 104 (1998)). "In undertaking such an analysis, 'a plaintiff's allegations are presumed to be true and a court may consider hypothetical facts not included in the record.'" Burton, 153 Wn.2d at 422 (quoting Tenore, 136 Wn.2d at 330).

A CR 12(b)(6) motion "should be granted 'sparingly and with care,' and only in the unusual case in which the plaintiff's allegations show on the face of the complaint an insuperable bar to relief." San Juan County v. No New Gas Tax, 160 Wn.2d 141, 164, 157 P.3d 831 (2007) (quoting Tenore, 136 Wn.2d at 330). "The purpose of CR 12(b)(6) is to weed out complaints where, even if that which the plaintiff alleges is true, the law does not provide a remedy." Alexander v. Sanford, 181 Wn. App. 135, 142, 325 P.3d 341, review granted, 339 P.3d 634 (2014).

Whether dismissal was appropriate under CR 12(b)(6) is a question of law this court reviews de novo. San Juan County, 160 Wn.2d at 164.

"[A]n action to quiet title is an equitable proceeding that is 'designed to resolve competing claims of ownership' to property." Bavand v. OneWest Bank, FSB, 176 Wn. App. 475, 502, 309 P.3d 636 (2013) (internal quotation marks omitted) (quoting Walker v. Quality Loan Serv. Corp., 176 Wn. App. 294, 322, 308 P.3d 716 (2013)). "The plaintiff in [a quiet title action] shall set forth in his or her

complaint the nature of his or her estate, claim, or title to the property, and the defendant may set up a legal or equitable defense to plaintiff's claims; and the superior title, whether legal or equitable, shall prevail." RCW 7.28.120.

"Reformation by a court is an equitable remedy that brings a writing that is materially different from the parties' agreement into conformity with that agreement." Glepco, LLC v. Reinstra, 175 Wn. App. 545, 560, 307 P.3d 744 (2013). A party seeking reformation must prove by clear, cogent, and convincing evidence that: (1) both parties to the instrument had an identical intention as to the terms to be embodied in a proposed written document, (2) the writing that was executed is materially at variance with that identical intention, and (3) innocent third parties will not be unfairly affected by reformation of the writing to express that identical intention. Leonard v. Wash. Emp., Inc., 77 Wn.2d 271, 279, 461 P.2d 538 (1969).

Here, U.S. Bank seeks to quiet title to the disputed land through reformation of the deed of trust and the trustee's deed. U.S. Bank acknowledges that its claims, in effect, reform or set aside CV Joint Ventures' tax deed. U.S. Bank contends that this is proper when taxes on the disputed property have actually been paid. CV Joint Ventures disagrees. It asserts that U.S. Bank has no interest in the disputed property because the tax sale destroyed all prior interests.

In general, "the tax lien is paramount to all other liens or claims. When foreclosure of such lien is made and real estate is sold thereunder, the fee passes to the purchaser, and all grants made by the owner of the fee must, of course, fall with the foreclosure." Hanson v. Carr, 66 Wash. 81, 83, 118 P. 927 (1911).

However, RCW 84.64.180 provides two exceptions to the finality of a tax deed:

> And any judgment for the deed to real property sold for delinquent taxes rendered after January 9, 1926, except as otherwise provided in this section, shall estop all parties from raising any objections thereto, or to a tax title based thereon, which existed at or before the rendition of such judgment, and could have been presented as a defense to the application for such judgment in the court wherein the same was rendered, and as to all such questions the judgment itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, *except in cases where the tax has been paid, or the real property was not liable to the tax.*

(Emphasis added.)

Under the first exception, the payment of taxes may be shown to defeat a tax deed. Solberg v. Baldwin, 46 Wash. 196, 200, 89 P. 561 (1907). The prima facie presumption that taxes or assessments were not paid at the time of the deed's issuance can be overcome if proof of actual payment exists. Port of Port Angeles v. Davis, 21 Wn.2d 660, 666, 152 P.2d 614 (1944). "It is the fact of payment of the taxes on the land occupied, not the description used in the tax receipt, that is determinative." Berry v. Pond, 33 Wn.2d 560, 565, 206 P.2d 506 (1949).

Smith v. Henley, 53 Wn.2d 71, 330 P.2d 712 (1958) is instructive. There, the plaintiff purchased the western of two adjacent parcels at a tax sale. 53 Wn.2d at 72. The defendants and their predecessors owned the eastern parcel, which they believed included a house, and had been paying taxes on the eastern parcel and on the house, which was listed as an improvement to the eastern parcel. 53 Wn.2d at 72. After the tax sale, the plaintiff had the land surveyed and discovered that the house was actually situated on the western parcel. He brought an

6

ejectment action to quiet title to the portion of the western parcel that included the house. 53 Wn.2d at 73.

The Supreme Court affirmed the judgment in favor of the defendants. It concluded that the plaintiff did not acquire title to the house by the tax deed, because the defendants had paid the taxes on the house. It reasoned:

> By the express reservation contained in RCW 84.64.180, it was made manifest that it was not the intent of the legislature to subject land on which taxes have been paid to foreclosure, or to deprive one in possession of the right to set up his payment as a defense to an action to oust him. . . .
>
> It is true that the mistake was that of the defendants and their predecessors as well as the assessors, but it was an honest mistake, based upon a reasonable assumption, and as we stated in Pierce County v. Newbegin[, 27 Wn.2d 451, 454, 178 P.2d 742 (1947),] "[i]t is not the policy of the law that the owner should lose his land through excusable mistake."

Smith, 53 Wn.2d at 75 (internal quotation marks omitted).

As these authorities indicate, if U.S. Bank and its predecessors paid taxes on a portion of Parcel C, U.S. Bank has a valid challenge to the tax foreclosure as to that portion of the property.

In its complaint, U.S. Bank alleged that "[a]t all relevant times, Parcel C has been taxed as unimproved, vacant land by the Pierce County Assessor's Office."[1] It also alleged that "[a]t all relevant times, Parcel B has been taxed as improved land (the land and the dwelling/residence)."[2] In its briefing on appeal, U.S. Bank asserts that it paid the taxes "on the entire house as assessed by the assessor"[3]

---

[1] Clerk's Papers (CP) at 6.
[2] CP at 6.
[3] Reply Br. of Appellant at 9.

7

and that "the taxes on Parcel B have been paid at all relevant times."[4] It is undisputed that most of the house is situated on Parcel C.

Based on these allegations, it is conceivable that U.S. Bank and its predecessors paid taxes on the portion of Parcel C that the Shelley house occupies. This is especially true given that, under RCW 84.04.090, "[t]he term 'real property' for the purposes of taxation shall be held and construed to mean and include the land itself . . . and all buildings, structures or improvements or other fixtures of whatsoever kind thereon." Under these hypothetical facts, U.S. Bank may have a valid challenge to the tax deed and viable claims for quiet title and reformation. Dismissal of these claims under CR 12(b)(6) was improper.

CV Joint Ventures argues that U.S. Bank cannot bring this action because it does not have a valid subsisting interest in the disputed property.[5] On this limited record, we cannot agree. U.S. Bank alleged that it purchased the disputed property in a trustee's sale and that the relevant parties intended the deed of trust to encumber the disputed property. U.S. Bank's quiet title action is concurrent with its effort to seek reformation of the trustee's deed. Such circumstances may give rise to a valid interest in the disputed property. See Glepco, 175 Wn. App. 555. Moreover, U.S. Bank also alleged that taxes were paid on a portion of the disputed property, and thus, the tax sale was invalid as to that land. Under these circumstances, we cannot conclude that U.S. Bank has no valid subsisting interest in at least a portion of the disputed property.

---

[4] Br. of Appellant at 29 n.2
[5] Br. of Resp't at 9-18.

CV Joint Ventures contends this case is more analogous to Label v. Cleasby, 13 Wn. App. 789, 793, 537 P.2d 859 (1975), than to Smith. In Cleasby, the taxpayer erroneously believed that he was paying taxes on the disputed land, but in fact, the taxes on the disputed property had not been paid by anyone. 13 Wn. App. at 793. On that basis, this court distinguished Smith and concluded that the taxpayer could not defeat the tax deed. 13 Wn. App. at 793. Here, as we explained earlier in this opinion, it is conceivable that the taxes on the disputed property were actually paid by U.S. Bank and its predecessors. This is sufficient to allow U.S. Bank's claim to proceed. The ultimate success of this claim under Smith and Cleasby can be determined once the record is further developed.

CV Joint Ventures asserts that the three-year statute of limitations in RCW 4.16.090 bars this action, because the tax deed was issued in December 2009 and U.S. Bank did not bring this action until April 2015. But the statute of limitations does not apply to an action to set aside a tax deed when taxes have actually been paid and a tax deed issued because of the alleged delinquent taxes. Davis, 21 Wn.2d at 666.

Finally, CV Joint Ventures argues that tax deeds are not subject to reformation. But this argument is premature. We leave the extent of the remedy, if any, to the trial court on remand.

### Attorney Fees

*Trial Court*

The trial court awarded attorney fees to CV Joint Ventures under RCW 4.28.328. In relevant part, that statute provides:

(3) Unless the claimant establishes a substantial justification for filing the lis pendens, a claimant is liable to an aggrieved party who prevails in defense of the action in which the lis pendens was filed for actual damages caused by filing the lis pendens, and in the court's discretion, reasonable attorneys' fees and costs incurred in defending the action.

In awarding attorney fees under this statute, the trial court concluded that U.S. Bank's case was advanced without substantial justification. For reasons we have explained, U.S. Bank may have a viable claim to the disputed property. Thus, the trial court's conclusion and its award of attorney fees were erroneous.

*On Appeal*

CV Joint Ventures requests attorney fees in this appeal. Because U.S. Bank may have a viable claim to the disputed property, and because this appeal is not frivolous, we deny this request.

We reverse and remand for further proceedings, with instructions to the trial court to vacate the order awarding attorney fees.

Trickey, ACJ

WE CONCUR:

10