[No. 52684–2. En Banc. November 13, 1986.]

THE CITY OF OLYMPIA, *Respondent,* v. CHRIS PALZER, ET AL, *Respondents,* OLYMPIC PROPERTIES, LTD., ET AL, *Petitioners,* EVERGREEN PARK HOMEOWNERS ASSOCIATION, *Respondent.*

*Bertil A. Granberg* and *Jane Granberg,* pro se.

*Mark O. Erickson, City Attorney,* for respondent City of Olympia.

*Chris Palzer* and *Cathy Palzer,* pro se.

GOODLOE, J.—This case involves whether a tax foreclosure sale conducted by the Thurston County Treasurer extinguishes restrictive covenants which limit the manner

in which a property owner in a planned unit development may use his or her land. The trial court and the Court of Appeals held that the restrictive covenants were not extinguished by the tax sale. *Olympia v. Palzer*, 42 Wn. App. 751, 713 P.2d 1125 (1986). We affirm.

Evergreen Park, an integrated residential–commercial planned unit development, was initially approved in 1969. It contains a greenbelt area set aside for the enjoyment and benefit of its inhabitants. Article 2 of the Covenants and Dedications Applicable to Evergreen Park, filed October 20, 1969, declared tracts A, B, C, and D to be greenbelts which must be maintained insofar as is reasonable in their natural condition, for the general beautification of Evergreen Park. The restrictive covenants were to run with the land for a period of 25 years, with automatic extensions for two additional 10–year periods, unless two–thirds of the lot owners agreed to change them by recorded written instrument.

The City of Olympia enacted ordinance 3776 in 1973. Ordinance 3776 altered the use and ownership provisions of the restrictive covenants pertaining to Evergreen Park. It provides that tracts A, B, C, and D should be an open space greenbelt area maintained in perpetuity as natural open space areas. The ordinance further provides that these tracts may only be owned by a municipal or state body, or the then present property owners, or a property owners' association.

For several years, property taxes were not paid by Evergreen Park, Inc., the original developer, on tracts A, B, C, and D. In December 1982, the Thurston County Treasurer put the tracts up for public sale pursuant to RCW 84.64 because of the property tax delinquencies. Chris and Cathy Palzer purchased tract D and a portion of tract A for $4,401.19, which included back property taxes and other fees imposed by the Thurston County Treasurer. The treasurer's sale agenda contained a notation of the limitations in ownership created by ordinance 3776. On December 22, 1982, the treasurer executed a "Treasurer's Deed" in favor of Chris Palzer. On February 24, 1983, the

Palzers sold the tracts they had bought to petitioner Olympic Properties, Ltd., for $135,000.

The City of Olympia brought suit to have rescinded and declared void the sales from Thurston County to the Palzers and from the Palzers to Olympic Properties. The bases of its action are the ownership and land use restrictions set forth in ordinance 3776.

Both sides moved for summary judgment. After written and oral argument to the court, the trial judge ruled that ordinance 3776 did not prohibit the sale of the property by the Thurston County Treasurer to the Palzers, but that it did prohibit the transfer of the property by the Palzers to Olympic Properties. The court held that ordinance 3776 did not prohibit the sale to the Palzers because said ordinance cannot enable the City of Olympia to regulate the manner in which the Thurston County Treasurer conducts a tax sale pursuant to RCW 84.64. The trial court further ruled that ordinance 3776 and the recorded covenants prohibited use of the property for any purpose other than as a greenbelt.

The Palzers and Olympic Properties appealed. The Court of Appeals held the portions of ordinance 3776 which purported to restrict ownership and to impose use restrictions in perpetuity were void, but held valid the use restrictions imposed by restrictive covenants. *Olympia v. Palzer, supra.* The Court of Appeals rejected the contention that the restrictive covenants were extinguished by the tax sale. Olympic Properties appealed to this court which granted discretionary review.

The issue we address is: Whether restrictive covenants which have been dedicated and recorded in a planned unit development (PUD), and which impose certain use restrictions, survive a tax foreclosure sale.

The provisions of RCW 84.64 provide for the creation of a new title free and clear of all encumbrances on sale of property at a tax foreclosure. However, RCW 84.64.460, enacted in 1959, provides:

The general property tax assessed on any tract, lot, or parcel of real property includes all easements appurtenant thereto, provided said easements are a matter of public record in the auditor's office of the county in which said real property is situated. *Any foreclosure of delinquent taxes on any tract, lot or parcel of real property subject to such easement or easements, and any tax deed issued pursuant thereto shall be subject to such easement or easements,* provided such easement or easements were established of record prior to the year for which the tax was foreclosed.

(Italics ours.) *See Clippinger v. Birge,* 14 Wn. App. 976, 985–86, 547 P.2d 871 (1976).

Prior to the enactment of RCW 84.64.460, this court had held that the sale of real property through a tax foreclosure extinguished all easements to which the property had previously been subject. *See, e.g., Brown v. Olmsted,* 49 Wn.2d 210, 214, 299 P.2d 564 (1956); *Harmon v. Gould,* 1 Wn.2d 1, 10, 94 P.2d 749 (1939); *Hanson v. Carr,* 66 Wash. 81, 83, 118 P. 927 (1911). By enacting RCW 84.64.460, the Legislature aligned Washington with a number of states which hold that the sale of property for the payment of delinquent taxes does not extinguish easements in the property. *See* 3 R. Powell & P. Rohan, *Real Property* ¶ 426 (1985).

Petitioners argue that the Court of Appeals erred in holding that restrictive covenants are not cut off by a tax foreclosure sale because it improperly applied RCW 84.64-.460, which applies only to easements, to restrictive covenants. Petitioners argue that the exclusion of restrictive covenants in RCW 84.64.460 implies that restrictive covenants were intentionally omitted. *See Dominick v. Christensen,* 87 Wn.2d 25, 27, 548 P.2d 541 (1976); *State v. Kuberka,* 35 Wn. App. 909, 911, 671 P.2d 260 (1983).

■■ "An *easement* is a right, distinct from ownership, to use in some way the land of another, without compensation", whereas a *restrictive covenant* limits the manner in which one may use his or her own land. *Kutschinski v. Thompson,* 101 N.J. Eq. 649, 656, 138 A. 569 (1927). Restrictive covenants are frequently described as negative

easements, often in the context of tax cases. *Halpin v. Poushter,* 59 N.Y.S.2d 338, 341 (N.Y. Sup. Ct. 1945) ("A tax foreclosure cannot be used to cut off restrictive covenants because the latter are easements."); *see Alamogordo Imp. Co. v. Prendergast,* 43 N.M. 245, 254, 91 P.2d 428, 122 A.L.R. 1277 (1939); *Northwestern Imp. Co. v. Lowry,* 104 Mont. 289, 302, 66 P.2d 792, 110 A.L.R. 605 (1937). For example, Annot., *Easement or Servitude or Restrictive Covenant as Affected by Sale for Taxes,* 168 A.L.R. 529, 536 (1947) states:

> That restrictive covenants as to the use of land or the location or character of buildings or other structures thereon create easements, frequently described as negative easements, has been held or stated in a number of cases.
>
> . . .
>
> A negative easement has been defined as one the effect of which is to preclude the owner of the land subject to the easement from doing that which, if no easement existed, he would be entitled to do, or *one which curtails the owner of the servient tenement in the exercise of some of his rights in respect of his estate in favor of the owner of the dominant tenement or tenements.*

(Citations omitted. Italics ours.) In PUD's, restrictive covenants are the same as negative easements because they curtail the rights of the owner of the servient tenement in favor of the owners of all of the dominant tenements.

The objectives of a PUD include a more efficient and desirable use of open land, and flexibility and variety in the physical development pattern, in order to provide a more desirable living environment than would be possible through a strict application of zoning ordinance requirements. *Wiggers v. Skagit Cy.,* 23 Wn. App. 207, 213–14, 596 P.2d 1345 (1979); *Frankland v. Lake Oswego,* 267 Or. 452, 417 P.2d 1042 (1973). Restrictive covenants are imposed as part of a common plan of development to benefit all of the grantees of the developer. *See generally Chimney Hill Owners' Ass'n v. Antignani,* 136 Vt. 446, 392 A.2d 423 (1978). The ability of homeowners in a PUD to enforce

restrictive covenants against original and subsequent property owners helps ensure that the community will be able to maintain its planned character and provide the lifestyle sought by its residents in making their homes there. *See generally* 6 P. Rohan, *Home Owner Associations and Planned Unit Developments* § 8.01 (1986).

The restrictive covenants which apply use restrictions on property located in Evergreen Park are meant to benefit all of the homeowners who live there. Greenbelt areas are an important feature of Evergreen Park. Statutory authority reflects that open areas are an integral part of subdivisions such as PUD's. RCW 58.17.110, .165. If these restrictive covenants were extinguished by the tax foreclosure sale, the planned character of Evergreen Park, the expectations of homeowners and statutory authority would be defeated.

The Court of Appeals cites the following authorities in holding that restrictive covenants are easements that are not cut off by a tax foreclosure sale: *Hendley v. Overstreet,* 253 Ga. 136, 318 S.E.2d 54 (1984) and *Halpin v. Poushter, supra. Olympia v. Palzer,* 42 Wn. App. 751, 754, 713 P.2d 1125 (1986). Courts from other jurisdictions have also held that neighborhood restrictive covenants survive a tax foreclosure sale. *See, e.g., Harrison v. Campagna,* 193 Misc. 239, 81 N.Y.S.2d 257 (N.Y. Sup. Ct. 1948); *Hayes v. Gibbs,* 110 Utah 54, 169 P.2d 781, 168 A.L.R. 513 (1946); *Doherty v. Rice,* 240 Wis. 389, 3 N.W.2d 734 (1942); *Alamogordo Imp. Co. v. Prendergast, supra; Northwestern Imp. Co. v. Lowry, supra; Schlafly v. Baumann,* 341 Mo. 755, 108 S.W.2d 363 (1937); *Crawford v. Senosky,* 128 Or. 229, 274 P. 306 (1929).

Petitioners rely on *Nedderman v. Des Moines,* 221 Iowa 1352, 1356, 268 N.W. 36 (1936) and *Messett v. Cowell,* 194 Wash. 646, 658, 79 P.2d 337 (1938), which indicate that restrictive covenants are extinguished by a tax sale and deed. However, the Iowa Supreme Court in *Polk Cy. v. Basham,* 234 Iowa 225, 12 N.W.2d 157 (1943) noted that the Iowa Legislature had changed the law after *Nedderman* and, therefore, *Nedderman* was no longer authoritative.

Similarly, *Messett* was decided prior to the enactment of RCW 84.64.460. Accordingly, we find that petitioners' legal authority is not controlling.

The preceding analysis compels the conclusion that the dedicated and recorded restrictive covenants applicable to Evergreen Park survived the tax foreclosure sale. No authority has been found to support petitioners' assertions to the contrary. We affirm the Court of Appeals.

DOLLIVER, C.J., UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.