[No. 10162-9-II.   Division Two.   January 7, 1988.]

LAKE ARROWHEAD COMMUNITY CLUB, INC., *Respondent,* v. WILLIAM LOONEY, ET AL, *Appellants.*

*Drew T. Nielsen* and *Nielsen, Nielsen & Leach,* for appellants.

*Herbert H. Fuller, Marya C. Fuller,* and *Fuller & Fuller,* for respondent.

REED, C.J.—Lake Arrowhead Community Club, Inc., is an organization of lot owners in the Lake Arrowhead development in Mason County. The original developers recorded a restrictive covenant in 1966, which provided that all lot owners were Club members, and that the Club had authority to assess the owners for maintenance of roads and recreational facilities. The Club later enacted bylaws allowing a lien to be placed on the property of lot owners who did not pay the assessment, and for the Club to foreclose on that lien.[1]

In 1978, William Looney acquired treasurer's deeds to certain lots in the development that were sold following foreclosure for general property taxes. Looney refused to pay these assessments and the Club filed an action to recover them and to foreclose its lien. The trial court granted the Club's summary judgment motion and ordered Looney to pay the past–due amounts. Looney appeals, arguing that the tax sale extinguished the original restrictive covenants.

It has been a long–standing rule in Washington that following a tax foreclosure sale of real property, a new title is

---

[1]The covenants themselves do not provide for such a lien. We need not discuss the validity of this bylaw extension of the covenants, however. The bylaws, of course, are not a matter of public record.

issued free of restrictions on that property, *Messett v. Cowell,* 194 Wash. 646, 658, 79 P.2d 337 (1938), because "the tax lien is paramount to all other liens or claims." *Hanson v. Carr,* 66 Wash. 81, 83, 118 P. 927 (1911).[2] This priority for tax liens has been based upon statutes such as RCW 84.60.010, which provides:

> All taxes and levies which may hereafter be lawfully imposed or assessed shall be and they are hereby declared to be a lien respectively upon the real and personal property upon which they may hereafter be imposed or assessed, which liens shall include all charges and expenses of and concerning the said taxes which, by the provisions of this title, are directed to be made. The said lien shall have priority to and shall be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation or responsibility to or with which said real and personal property may become charged or liable.

The claim for assessments in the case at hand clearly falls within the scope of RCW 84.60.010 and the ensuing rule, because a lien has been imposed upon the land for past–due amounts.

■■ However, the priority of tax liens is currently limited by RCW 84.64.460, so that some interests survive the sale:

> The general property tax assessed on any tract, lot, or parcel of real property *includes all easements appurtenant thereto, provided said easements are a matter of public record* in the auditor's office of the county in which said real property is situated. Any foreclosure of delinquent taxes on any tract, lot or parcel of real property *subject to such easement or easements, and any tax deed issued pursuant thereto shall be subject to such easement or easements,* provided such easement or easements were established of record prior to the year for which the tax was foreclosed.

(Italics ours.) In *Olympia v. Palzer,* 107 Wn.2d 225, 230, 728 P.2d 135 (1986), our Supreme Court interpreted this statute to allow a covenant restricting a landowner's use of

---

[2]This rule is further discussed in Comment, *The Assessment and Taxation of Easements,* 16 Wash. L. Rev. 36, 38–39 (1941).

property to survive a tax sale. The court reasoned that a restrictive covenant that limits the use of land is a negative easement, one that effectively

> preclude[s] the owner of the land subject to the easement from doing that which, if no easement existed, he would be entitled to do, or one which curtails the owner of the servient tenement in the exercise of some of his rights in respect of his estate in favor of the owner of the dominant tenement or tenements.

(Italics omitted.) *Palzer,* at 230, citing Annot., *Easement or Servitude or Restrictive Covenant as Affected by Sale for Taxes,* 168 A.L.R. 529, 536 (1947).

A provision very similar to Lake Arrowhead's was treated as a restrictive covenant running with the land in *Rodruck v. Sand Point Maintenance Comm'n,* 48 Wn.2d 565, 576, 295 P.2d 714 (1956). Our remaining question, then, is whether this restrictive covenant constitutes a negative easement and survived the tax sale under RCW 84.64.460. Put differently, it is whether the analysis of *Palzer,* 107 Wn.2d at 230, applies to all restrictive covenants. To either question, we must answer "no." This covenant, requiring landowners to become Club members—and therefore to pay dues—is clearly an affirmative covenant, which requires the landowners to do some act. *See* 5 R. Powell, *Real Property* ¶ 675 (1987). As such, it hardly meets the above quoted definition of a negative easement: it does not preclude Looney from any activity or use of the land, nor does it restrict his exercise of rights in that land. Therefore, it is plainly distinguishable from the covenant discussed in *Olympia v. Palzer, supra,* which fits squarely within the definition of a negative easement. Because this covenant falls outside the definition of a negative easement, and the *Palzer* analysis, it also falls outside the purview of RCW 84.64.460.[3] It did not survive the tax sale, and Looney need not pay dues.

---

[3]The statute applies only to easements *appurtenant*; the covenant is more nearly analogous to an easement in gross, because it is not created to benefit, nor does it benefit, the possessor of land in using that land. Restatement of Property

We recognize that commentators have argued for a different result: preservation of the covenant. *See, e.g.,* Kratovil, *Tax Titles: Extinguishment of Easements, Building Restrictions and Covenants,* 19 Hous. L. Rev. 55 (1981). We also recognize that much of the policy analysis favoring planned development, as enunciated in *Palzer,* 107 Wn.2d at 230–31, supports preserving this covenant. Nonetheless, we are constrained to adhere to the ordinary meaning of the statute's unambiguous language. *Tacoma v. Taxpayers,* 108 Wn.2d 679, 693, 743 P.2d 793 (1987); *McCarver v. Manson Park & Rec. Dist.,* 92 Wn.2d 370, 376, 597 P.2d 1362 (1979). Because the statute applies only to easements, and this clearly was not an easement, we must reverse the trial court's decision. It is so ordered.

PETRICH and WORSWICK, JJ., concur.

Review granted by Supreme Court May 3, 1988.

§ 454, § 567 caveat (1944). Easements in gross do not survive a tax sale. Restatement § 509(1).