# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CITIGROUP MORTGAGE LOAN TRUST INC. ASSET BACKED PASS-THROUGH CERTIFICATES SERIES 2007-FSI,

Respondent,

v.

DAVID VOURNAS, a single man,

Appellant.

No. 85942-1-I

DIVISION ONE

UNPUBLISHED OPINION

FELDMAN, J. — David Vournas appeals the trial court's order denying his motion for summary judgment, granting the motion for summary judgment filed by U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust Inc. Asset Backed Pass-Through Certificates Series 2007-FSI (U.S. Bank), reforming two deeds, and quieting title to real property and a structure thereon in favor of U.S. Bank. We reverse in part, affirm in part, and remand for further proceedings.

I

This dispute concerns a house (the House) that straddles the boundary line separating two adjacent parcels of real property in King County, Washington. The western half of the House was constructed on Lot 14, Block 7, Brighton Beach

Orchard Addition (Lot 14), and the eastern half of the House was constructed on the adjacent Lot 15. The record indicates the King County Assessor (the Assessor), for property tax purposes, assessed the improvement value of the House entirely on Lot 15. As for Lot 14, the Assessor did not assess an improvement value on that parcel, assessed the value of only its land, and classified it as vacant.

In 1998, Helen and Lawrence Fillmore acquired title to Lot 15 via a statutory warranty deed. The Fillmores also executed a deed of trust to secure Lot 15 and "all the improvements" erected thereon as collateral for a promissory note in favor of Norwest Mortgage, Inc. In 1999, the statutory warranty deed and deed of trust were both rerecorded to "correct [the] legal description" in both instruments to include Lot 14.

The Fillmores subsequently refinanced their mortgage multiple times. In 2005, the Fillmores executed a deed of trust (the 2005 Deed of Trust) in favor of Long Beach Mortgage Company. In 2007, the Fillmores executed another deed of trust (the 2007 Deed of Trust) in favor of Fieldstone Mortgage Company (Fieldstone). Like the original 1998 instruments, both the 2005 and 2007 Deeds of Trust omitted Lot 14 from the legal description and only secured Lot 15 and "all the improvements" erected thereon. Under both the 2005 and 2007 Deeds of Trust, it appears the Fillmores were required to pay to their lenders the amount of property taxes due on Lot 15 (but not Lot 14), and the lenders would, in turn, pay these property taxes out of escrow to the county treasurer.

By 2010, the property taxes for Lot 14 were no longer being paid. After Lot 14 remained tax delinquent for several more years, the parcel was sold at tax sale to Vournas in 2013. On December 13, 2013, Vournas received a tax deed to Lot 14 (the Tax Deed), which he later recorded in February 2014.

Following the tax sale, Vournas and the Fillmores disputed ownership of the portion of Lot 14 upon which the House was situated. After the House was damaged in a fire in 2015, Vournas objected to the Fillmores' efforts to rebuild the portion of the House located on Lot 14. And in 2016, Vournas recorded a "Notice of Structure Straddling Tax Parcels," which stated, "Let it be known that the house commonly known as 7301 48th Ave. S, Seattle is situated across two separate tax parcels, Parcel A ([Lot 14]) and Parcel B ([Lot 15]). These two tax parcels are, at the time of this recording, in separate ownership."

Meanwhile, in 2017, the 2007 Deed of Trust was assigned to U.S. Bank via an Assignment of Deed of Trust (the Assignment). As with the 2007 Deed of Trust, the Assignment's legal description of the subject property referred only to Lot 15 and omitted Lot 14. When Helen Fillmore became delinquent on the loan secured by the deed of trust, U.S. Bank initiated nonjudicial foreclosure proceedings.

Prior to the trustee's sale, the trustee of the 2007 Deed of Trust recorded a notice of trustee's sale stating that both Lots 14 and 15 would be sold to satisfy "the obligation secured by the [2007] Deed of Trust" and expense of sale. Vournas' counsel notified the trustee that Lot 14 could not be sold in the trustee's sale because the 2007 Deed of Trust "covers only Lot 15." In response, the trustee acknowledged that "we are aware of the title issue" and assured Vournas' counsel

that all bidders at the trustee's sale would be required to sign a disclaimer stating the following:

> [O]ne of the parcels secured by the Deed of Trust being foreclosed as to this property **7301 48th Ave S. SEATTLE, WA 98118** was lost to a tax sale foreclosure in 2013. For this reason title to LOT 14 will not transfer with the Trustee's Deed issued. All bidders should be aware this property is being sold "as is" and all bidders should have completed their own analysis and investigations before bidding on the property.

At the trustee's sale, U.S. Bank made a full credit bid of $352,699.45 and obtained a Trustee's Deed Upon Sale (the Trustee's Deed) to Lot 15.

Thereafter, U.S. Bank initiated the instant action against Vournas to obtain an order (1) reforming the 2007 Deed of Trust and the Trustee's Deed to modify the legal descriptions to include either the entirety of Lot 14 or the portion of Lot 14 upon which the House sits, (2) quieting title in U.S. Bank's favor to "the portion of [Lot 14] upon which [the House] encroaches and the land underneath such encroaching portion of [the House]," (3) granting U.S. Bank "an exclusive easement" over such property "based on prescriptive easement, mutual recognition and acquiescence, implied easement, and/or easement by necessity," and (4) granting declaratory and injunctive relief to this effect. In response, Vournas filed counterclaims for trespass and ejectment and sought an order requiring U.S. Bank to remove the House from Lot 14.

The parties filed cross-motions for summary judgment. Following two hearings on the summary judgment motions, the trial court issued an order granting U.S. Bank's motion, denying Vournas' motion, and dismissing Vournas' counterclaims. The order states that the 2007 Deed of Trust and the Trustee's

Deed "are hereby reformed so that the legal description of the real property in each shall include both the current legal description therein . . . and the legal description for the entirety of the encroaching house . . . and land underneath such house which is on" Lot 14. The order further states that "title to the Encroaching House and Land on Lot 14 is hereby quieted in [U.S. Bank] and its successors and assigns to the exclusion of [Vournas]" and that "Vournas and his successors and assigns and anyone taking by or through the same have no right, title, or interest in the Encroaching House and Land on Lot 14." The trial court later entered a judgment to this same effect. The illustration below represents the approximate boundary lines of the parcels that have resulted from the trial court's orders, with the left parcel representing Lot 14 and the right parcel representing Lot 15:



Vournas appeals.

**II**

Because the central and dispositive issue in this case is the extent of Vournas' interest in Lot 14, we begin our analysis with an overview of Washington's tax foreclosure process and conclude that Vournas' Tax Deed is valid and granted him an interest in Lot 14 that is superior to all other titles, superior to all prior possessory rights, and free and clear of all encumbrances. We next address U.S. Bank's claims and conclude that, given Vournas' superior title to Lot 14, U.S. Bank is not entitled to reformation of the prior deeds, an order quieting title to the portion of Lot 14 upon which the House sits, or an easement over Lot 14. Lastly, we address Vournas' counterclaims for ejectment and trespass and conclude that while the House is encroaching onto Lot 14, genuine issues of material fact exist as to whether ejectment is the appropriate remedy.

**A**

Owners of real property in Washington have a duty to pay property taxes on each parcel of real property they own. RCW 84.36.005. These taxes create a tax lien upon the parcel on which they are imposed or assessed, and this lien "has priority to and must be fully paid and satisfied before any recognizance, mortgage, judgment, debt, obligation, or responsibility to or with which the real . . . property may become charged or liable." RCW 84.60.010. If the property owner fails to pay taxes on a given parcel for three years, the county treasurer must initiate tax foreclosure proceedings against that parcel. RCW 84.64.050. The treasurer gives notice of this proceeding to both the owner and "any person having a recorded interest in or lien of record upon the property" to provide them with an opportunity

to "defend such action or pay the amount due." RCW 84.64.050(4). If the taxes remain unpaid and no objection is made, the superior court must issue a judgment for the amount of taxes, interest, and costs due and order the parcel to be sold at a tax sale. RCW 84.64.080(3). The treasurer ultimately sells the parcel at a tax sale auction to the highest bidder and issues a tax deed vesting title in the parcel to the tax sale purchaser. RCW 84.64.080(4), (11).

"[T]ax deeds are favored" under Washington law. *Wenatchee Reclamation Dist. v. Mustell*, 102 Wn.2d 721, 730, 684 P.2d 1275 (1984). The title conveyed by a tax deed is "a new and independent title, superior to all prior titles." *Bassett v. City of Spokane*, 98 Wash. 654, 656, 168 P. 478 (1917). This title is also "superior to any prior possessory rights, however exclusive or adverse," *Label v. Cleasby*, 13 Wn. App. 789, 791, 537 P.2d 859 (1975), and is "free and clear of all encumbrances," *City of Olympia v. Palzer*, 107 Wn.2d 225, 228, 728 P.2d 135 (1986). Moreover, RCW 84.64.180 provides that tax deeds "shall be prima facie evidence in all controversies and suits in relation to the right of the purchaser, his or her heirs and assigns, to the real property thereby conveyed" of several facts, including that the parcel "was subject to taxation at the time the same was assessed," the parcel "had been listed and assessed in the time and manner required by law," the taxes were not paid before the issuance of the tax deed, and "the sale was conducted in the manner required by law." The statute further states in relevant part that a judgment for the issuance of a tax deed is "conclusive evidence of its regularity and validity in all collateral proceedings" and "shall estop all parties from raising any objections thereto, or to a tax title based thereon, which

existed at or before the rendition of such judgment, and could have been presented as a defense to the application for such judgment." *Id.*

Critical to our analysis here, U.S. Bank has not alleged any error in the tax foreclosure proceedings involving Lot 14. To the contrary, U.S. Bank's counsel conceded at oral argument, "There is a valid tax deed." Wash. Ct. of Appeals oral argument, *U.S. Bank Nat'l Ass'n v. Vournas*, No. 85942-1-I (Oct. 31, 2024), at 10 min., 10 sec. to 10 min., 27 sec. (on file with court). U.S. Bank also represents in its appellate brief that it "did not file suit to attack Vournas' tax deed." And as to the assessment of taxes, U.S. Bank admittedly "does not claim the Assessor erred in assessing the taxes" when it "taxed the [House] to Lot 15 instead of splitting it between Lot[] 14 and Lot 15." Given the issuance of a tax deed and the absence of a challenge to the tax foreclosure of Lot 14, we must presume these proceedings were lawfully conducted. *See* RCW 84.64.180. Therefore, we conclude that Vournas' Tax Deed granted him a title to Lot 14 that is superior to all prior titles, superior to any possessory rights, however exclusive or adverse, and free and clear of all encumbrances. *See Bassett*, 98 Wn. at 656; *Palzer*, 107 Wn.2d at 228; *Label*, 13 Wn. App. at 791.

**B**

Having determined the extent of Vournas' interest in Lot 14, we next address whether the trial court's summary judgment rulings with respect to U.S. Bank's claims were erroneous. We review summary judgment orders de novo and sit in the same position as the trial court. *Killian v. Seattle Pub. Schs.*, 189 Wn.2d 447, 453, 403 P.3d 58 (2017). "We view the facts and all reasonable inferences

in the light most favorable to the nonmoving party." *Id.* at 454. Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Also relevant here, we may reverse a trial court's order denying the appellant's summary judgment motion and remand for the trial court to enter summary judgment in favor of the appellant where, as here, the record shows the appellant is entitled to such relief. *S & K Motors, Inc. v. Harco Nat'l Ins. Co.*, 151 Wn. App. 633, 635, 213 P.3d 630 (2009).

Additionally, we review the fashioning of equitable remedies on summary judgment for an abuse of discretion. *Borton & Sons, Inc. v. Burbank Props., LLC*, 196 Wn.2d 199, 205, 471 P.3d 871 (2020). However, the threshold question of "whether equitable relief is appropriate is a question of law that we review de novo." *Id.* at 207. Thus, we will reverse a trial court's grant of equitable relief where it did not have discretion to grant such relief. *Id.* at 213-14.

With these standards of review in mind, we conclude the trial court erred in granting summary judgment in favor of U.S. Bank on its claims because, given the superiority of Vournas' Tax Deed, U.S. Bank is not entitled to reformation of the prior deeds, an order quieting title to the disputed property, or an easement. For these same reasons, we conclude the trial court erred in denying Vournas' summary judgment motion seeking dismissal of these claims.

**1**

Vournas argues the trial court erroneously reformed the 2007 Deed of Trust and Trustee's Deed to insert into the deeds' legal descriptions the portion of Lot 14 upon which the House is situated. We agree.

- 9 -

"The general rule in Washington is that a deed containing an inadequate legal description of the property to be conveyed is not subject to reformation." *Snyder v. Peterson*, 62 Wn. App. 522, 525, 814 P.2d 1204 (1991). However, a court may reform a deed in an "appropriate factual setting," such as where a deficient legal description in the deed was caused by a mutual mistake or a scrivener's error. *Id.* at 526-27 (quoting *Williams v. Fulton*, 30 Wn. App. 173, 176 n.1, 632 P.2d 920 (1981)). The party seeking reformation must prove by "clear, cogent, and convincing evidence" the following three elements:

> (1) both parties to the instrument had an identical intention as to the terms to be embodied in a proposed written document, (2) the writing which was executed is materially at variance with that identical intention, and (3) innocent third parties will not be unfairly affected by reformation of the writing to express that identical intention.

*Buchheit v. Geiger*, 192 Wn. App. 691, 697, 368 P.3d 509 (2016). Reformation is an equitable remedy, *GLEPCO, LLC v. Reinstra*, 175 Wn. App. 545, 560, 307 P.3d 744 (2013), and whether equitable relief is appropriate is a question of law that we review de novo, *Borton*, 196 Wn.2d at 206.

Here, U.S. Bank's reformation claim does not meet the third element because Vournas is an innocent party and will be unfairly affected by reformation of the 2007 Deed of Trust and the Trustee's Deed. Vournas validly obtained Lot 14 in the tax sale and has paid taxes on that property for nearly a decade. As set forth more fully below, he also provided actual and constructive notice of his ownership interests. It is equally clear that he will be unfairly affected by reformation because apportionment of land between Lots 14 and 15 is a zero-sum-game: redrawing the boundaries of Lot 15 to increase its size would necessarily

decrease the size of Lot 14. Reformation is especially unfair when it affects a valid tax deed, given our Supreme Court's acknowledgment that "'a court of equity will not interfere to reform a tax deed or order the correction of errors in it.'" *Kennedy v. Anderson*, 88 Wash. 457, 460, 153 P. 319 (1915) (quoting 37 CYC. *Taxation* 1450 (1911)). Thus, the test for reformation of a deed containing an inadequate legal description of the property to be conveyed is not satisfied here.

U.S. Bank posits that Vournas is not an innocent party because he purchased Lot 14 at tax sale for below market value and was aware that the House encroached onto Lot 14. This argument fails because Vournas' subjective intent in purchasing Lot 14 does not undermine the validity of his Tax Deed. *See Label*, 13 Wn. App. at 793-94 (noting that "bad faith on the part of the one who purchases a tax deed" does not "bring the owner within the protection against tax foreclosure"). And although Vournas likely acquired Lot 14 at below fair market value (he purchased it for $21,500 when it was assessed at $74,000), that is not uncommon at tax sales. *See Palzer*, 107 Wn.2d at 227-28 (observing that parcels purchased at tax sale for under $4,500 were sold two months later for $135,000). In any event, Lot 14 was sold at tax sale due to the actions of U.S. Bank's predecessors, namely their failure to pay taxes, not as a result of any bad faith on Vournas' part.

In support of its reformation claim, U.S. Bank relies heavily on our unpublished decision in *U.S. Bank National Ass'n v. North American Title Co.*, which addressed an analogous situation where a house straddled two separate parcels, taxes relating to this improvement were assessed only on one parcel, the

mortgagee's deed of trust referred only to this parcel, and the other parcel was sold in a tax sale. No. 74843-2-I, slip op. at 1-3 (Wash. Ct. App. June 6, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/748432.pdf.[1] After the mortgagee acquired ownership of the parcel described in the deed of trust following a trustee's sale, the mortgagee sought to reform the legal descriptions in the deed of trust and trustee's deed and to quiet title to the parcel sold at tax sale. *Id.* The trial court granted the tax sale purchaser's CR 12(b)(6) motion and dismissed the mortgagee's claims. *Id.* On appeal, we reversed and held that, because it was "conceivable that [the mortgagee] and its predecessors paid taxes on the portion of Parcel C that the . . . house occupies," the mortgagee "may have a valid challenge to the tax deed and viable claims for quiet title and reformation." *Id.* at 8. In so holding, we relied on RCW 84.64.180, which provides two exceptions to the finality of a tax deed "'in cases where the tax has been paid, or the real property was not liable to the tax.'" *Id.* at 6 (quoting RCW 84.64.180).

*U.S. Bank* is distinguishable because, as explained in section II.A above, U.S. Bank in this case does not challenge the tax foreclosure of Lot 14. Instead, U.S. Bank concedes that Vournas has a "valid tax deed" (Wash. Ct. of Appeals oral argument, *U.S. Bank Nat'l Ass'n v. Vournas*, No. 85942-1-I (Oct. 31, 2024), at 10 min., 10 sec. to 10 min., 27 sec. (on file with court)) and "does not claim the Assessor erred in assessing the taxes." Moreover, it is not conceivable that U.S.

---

[1] Although U.S. Bank does not cite to GR 14.1(a), this rule states, "[U]npublished opinions of the Court of Appeals filed on or after March 1, 2013, may be cited as nonbinding authorities, if identified as such by the citing party, and may be accorded such persuasive value as the court deems appropriate." GR 14.1(c) further states that appellate courts may cite and discuss unpublished opinions where, as here, doing so is "necessary for a reasoned discussion."

Bank paid taxes on the portion of Lot 14 that the House occupies, and has thereby defeated Vournas' Tax Deed under RCW 84.64.180, because U.S. Bank admits Lot 14 "was sold because taxes were not being paid on that lot." As a result, *U.S. Bank* is inapposite.[2]

U.S. Bank also argues reformation is warranted under our holding in *GLEPCO*, where we affirmed the trial court's reformation of a trustee's deed and a prior deed of trust because an error in the legal descriptions to those deeds misled the trustee's sale purchasers into believing they were acquiring more property than their deed conveyed. 175 Wn. App. at 564. But *GLEPCO* did not involve an intervening tax sale between the execution of the original deed of trust and the trustee's sale that granted a tax sale purchaser superior title to the property. And unlike the purchasers in *GLEPCO*, who did not discover the error until after the trustee's sale, U.S. Bank had notice prior to the sale of the erroneous legal descriptions in the deeds it seeks to reform. *Id.* at 552-53. The record indicates the trustee required all bidders at the trustee's sale, which would have necessarily included U.S. Bank, to sign a disclaimer before the sale acknowledging that Lot 14 was previously "lost to a tax sale foreclosure" and "will not transfer with the Trustee's Deed issued." Moreover, the chain of title to Lot 15 included multiple recorded instruments putting U.S. Bank on constructive notice of this issue before it first acquired an interest therein in 2017. Among these instruments were the corrective statutory warranty deed and deed of trust recorded in 1999 as well as Vournas' conspicuously named "Notice of Structure Straddling Tax Parcels"

---

[2] For these same reasons, U.S. Bank's reliance on *Smith v. Henley*, 53 Wn.2d 71, 330 P.2d 712 (1958), is also misplaced.

recorded in 2016, which stated that the House was "situated across two separate tax parcels, Parcel A ([Lot 14]) and Parcel B ([Lot 15])" and that these parcels were "in separate ownership." Thus, *GLEPCO* does not entitle U.S. Bank to reformation.

In sum, the trial court could not properly grant reformation of the 2007 Deed of Trust and Trustee's Deed. Therefore, Vournas, not U.S. Bank, is entitled to summary judgment on this claim.

**2**

Next, Vournas argues the trial court erred in quieting title in favor of U.S. Bank to the portion of the House that encroaches onto Lot 14 and the land underneath. We agree.

The purpose of a quiet title action is to "resolve competing claims of ownership." *Kobza v. Tripp*, 105 Wn. App. 90, 95, 18 P.3d 621 (2001). Quiet title actions are governed by RCW 7.28.010, which states in relevant part, "Any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action . . . against the person claiming the title or some interest therein, and may have judgment in such action quieting or removing a cloud from plaintiff's title." The plaintiff "shall set forth in [their] complaint the nature of [their] estate, claim, or title to the property, and the defendant may set up a legal or equitable defense to plaintiff's claims." RCW 7.28.120. "[T]he superior title, whether legal or equitable, shall prevail." *Id.* Additionally, "[a] party seeking to quiet title must succeed on the strength of its own title, and cannot prevail based on the weakness of the other party's title." *Wash. Sec. & Inv. Corp. v. Horse Heaven Heights, Inc.*, 132 Wn. App. 188, 195, 130 P.3d

880 (2006). An action to quiet title is equitable in nature, *Kobza*, 105 Wn. App. at 95, and whether equitable relief is appropriate is a question of law that we review de novo, *Borton*, 196 Wn.2d at 206.

The trial court's summary judgment order does not explain the legal basis upon which it quieted title to the disputed property in favor of U.S. Bank. As discussed in section II.B.1 above, U.S. Bank is not entitled to reformation and, thus, may not quiet title to the disputed portion of Lot 14 on this basis. U.S. Bank proposes two alternative bases for its estate, claim, or title to the disputed portion of Lot 14, but we reject both of them.

First, U.S. Bank contends it adversely possessed the disputed real property under RCW 7.28.070 after Vournas acquired the Tax Deed in 2013. RCW 7.28.070 governs actions for "[a]dverse possession under claim and color of title" and states:

> Every person in actual, open and notorious possession of lands or tenements under claim and color of title, made in good faith, and who shall for seven successive years continue in possession, and shall also during said time pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title.

Color of title "'means that the adverse claimant holds or traces back to a title document, usually a deed, that appears on its face to convey good title, but that, for some reason that does not appear on its face, did not convey title.'" *Campbell v. Reed*, 134 Wn. App. 349, 358, 139 P.3d 419 (2006) (quoting WILLIAM B. STOEBUCK & JOHN W. WEAVER, 17 WASHINGTON PRACTICE, REAL ESTATE PROPERTY LAW § 8.20, at 542 (2d ed. 2004)). When asserting ownership under RCW

7.28.070, "'One may not claim property under color of title when the property is not described in the deed.'" *Id.* (quoting *Heikkinen v. Hansen*, 57 Wn.2d 840, 844, 360 P.2d 147 (1961)).

Here, U.S. Bank cannot rely on RCW 7.28.070 to obtain ownership of Lot 14 because it does not have color of title to that parcel. Both the 2007 Deed of Trust and the Trustee's Deed describe only Lot 15—not Lot 14—in the legal descriptions of the property being conveyed. RCW 7.28.070 is also unavailing to U.S. Bank because Vournas—not U.S. Bank—has paid all taxes assessed on Lot 14 since the tax sale in 2013. Therefore, U.S. Bank cannot obtain ownership over any portion of Lot 14 under RCW 7.28.070 and, accordingly, cannot quiet title to Lot 14 on that basis.

As to U.S. Bank's second basis for quieting title, it appears to assert equitable title to the portion of the House situated on Lot 14 and the underlying land based on the principle that "[a] court will grant equitable relief when a party is entitled to a remedy and the remedy at law is inadequate." In support of this general equitable argument, U.S. Bank cites various facts in the record relating to Vournas' acquisition of Lot 14 in the tax sale that show "[e]quity favors U.S. Bank, not Vournas."[3] This argument is unpersuasive because "'a court of equity will not

---

[3] These facts include (1) U.S. Bank's payment of $352,699.45 for Lot 15 at the trustee's sale, (2) the intention of the Fillmores and Fieldstone to include the entire House as collateral to secure repayment of the loan associated with the 2007 Deed of Trust, (3) the Fillmores and U.S. Bank's payment of property taxes on the portion of the House situated on Lot 14 since 1998, (4) U.S. Bank's lack of "knowledge of any issue, or that Vournas was making any claim to eject U.S. Bank's home from Lot 14, until 2022," (5) the hardship U.S. Bank would suffer if forced to relocate the House, (6) Vournas being "an experienced purchaser of properties at tax sale," (7) Vournas' knowledge when he purchased Lot 14 that the House was partially situated upon it and that taxes associated with the House were not assessed to Lot 14, (8) Vournas not informing the Fillmores' lender that he purchased Lot 14 in the tax sale, and (9) the disparity between the price Vournas paid to acquire the Tax Deed and the assessed value of Lot 14 and the House.

interfere to reform a tax deed or order the correction of errors in it.'" *Kennedy*, 88 Wash. at 460 (quoting 37 CYC. *Taxation* 1450 (1911)); *see also Bassett*, 98 Wash. at 656 (a tax deed "makes a straight line between the old and the new titles, destroying the validity of the old title as a title and forever barring any enforcement of that title as a valid subsisting title"). Thus, Vournas' valid Tax Deed by its very nature grants him an interest in Lot 14 that is superior to any equitable title thereto held by U.S. Bank. The trial court erroneously used its equitable powers to rule otherwise.

Even if Vournas' interest in Lot 14 were open to equitable attack, equity does not favor U.S. Bank. Tax deeds are favored under Washington law because they "aid . . . the right and power of the state to collect the public revenue." *Williams v. Pittock*, 35 Wash. 271, 277, 77 P. 385 (1904). By purchasing Lot 14 in the tax sale, Vournas assisted the government in collecting delinquent taxes that U.S. Bank's predecessors in interest neglected to pay for several years. Quieting title to the disputed portion of Lot 14 in favor of U.S. Bank would incentivize the nonpayment of taxes and undermine a valid tax deed.

On the other hand, equity does not favor U.S. Bank because it and its predecessors in interest could have easily avoided this predicament through due diligence. The confusion about who was responsible for paying the property taxes on Lot 14 was apparently caused by the Fillmores and their prior lenders thrice making the same error in describing the collateral secured by the 1998, 2005, and 2007 deeds of trust. Moreover, U.S. Bank does not dispute that the Fillmores received the treasurer's pre-sale notice of the tax foreclosure proceedings

involving Lot 14 and had an opportunity to object to them. *See* RCW 84.64.050. The Fillmores also had actual notice of the tax sale shortly after the Tax Deed was issued in December 2013. But rather than immediately contest the tax foreclosure, the Fillmores claimed the $15,300 in tax sale surplus that Vournas paid to acquire Lot 14 in the tax sale.[4] At bottom, the loss of ownership of Lot 14 was caused by the Fillmores and their lenders' failures to correctly describe the collateral securing the loan and to ensure that taxes were paid on it. *See Label*, 13 Wn. App. at 793 ("If there was error here which prevented the payment of tax, it was purely the error of the taxpayer who, in the absence of remedial legislation, must be deemed to bear the risk of a faulty legal description contained in [their] deed.").

Further, U.S. Bank had ample warning of the location of the House before acquiring an interest in Lot 15 via the Assignment in 2017. As explained in section II.B.1 above, the chain of title to Lot 15 included multiple recorded instruments indicating the House was partially located on Lot 14 and that this parcel was not secured by the 2007 Deed of Trust. As U.S. Bank acknowledged in its summary judgment briefing below, "A simple visual inspection of the property or review of the assessor's records would show that a home straddled both lots, including the sole lot subject to the tax sale." U.S. Bank nonetheless decided to purchase Lot 15 at the trustee's sale and initiate the instant action to acquire Lot 14 from Vournas without compensating him for the value of his lost property. Under these

---

[4] When a parcel is sold at tax sale, the minimum starting bid is the amount of delinquent taxes, interest, and costs of sale associated with that parcel. RCW 84.64.080(4). The amount by which the winning purchaser's final bid exceeds this minimum bid is referred to as the "excess" or "surplus," and the "record owner of the property" is entitled to claim these funds after the sale. RCW 84.64.080(10); *Jespersen v. Clark County*, 199 Wn. App. 568, 580, 399 P.3d 1209 (2017).

circumstances, U.S. Bank has no basis in equity to quiet title. The trial court thus erred in quieting title to the disputed property in favor of U.S. Bank, and Vournas is entitled to summary judgment as a matter of law dismissing this claim.

**3**

Lastly, U.S. Bank argues even if it is not entitled to reformation or an order quieting title, it is entitled to an easement implied by necessity over the portion of Lot 14 upon which the House sits.[5] We disagree.

"An implied easement 'is an expression of public policy that will not permit property to be landlocked and rendered useless.'" *Tiller v. Lackey,* 6 Wn. App. 2d 470, 496-97, 431 P.3d 524 (2018) (quoting *Hellberg v. Coffin Sheep Co.*, 66 Wn.2d 664, 666-67, 404 P.2d 770 (1965)). "'[E]asements by implication are not favored by the courts because they are in derogation of the rule that written instruments speak for themselves.'" *Id.* at 500 (quoting *MacMeekin v. Low Income Hous. Inst., Inc.*, 111 Wn. App. 188, 196, 45 P.3d 570 (2002)). A party seeking an implied easement must prove three elements: "(1) unity of title in the common grantor, (2) a severance of the estate, and (3) necessity." *Granite Beach Holdings, LLC v. Dep't of Nat. Res.*, 103 Wn. App. 186, 196, 11 P.3d 847 (2000).

Here, U.S. Bank cannot satisfy the necessity element because it still has access to the House. Lot 15 is not landlocked; it abuts two public streets. Nor is

---

[5] U.S. Bank asks for an "implied easement," without clarifying which form of implied easement it is seeking. *See* WILLIAM B. STOEBUCK & JOHN W. WEAVER, 17 WASHINGTON PRACTICE, REAL ESTATE PROPERTY LAW §§ 2.4-2.6, at 89-98 (2004) (easements may be implied from prior use, necessity, and plat). Because U.S. Bank's brief directs our attention to cases discussing easements implied by necessity to prevent property from becoming landlocked and recites the elements therefor, we address this type of implied easement. *See Tiller v. Lackey*, 6 Wn. App. 2d 470, 496-97, 431 P.3d 524 (2018); *Granite Beach Holdings, LLC v. Dep't of Nat. Res.*, 103 Wn. App. 186, 196, 11 P.3d 847 (2000).

the house landlocked or otherwise inaccessible, as Lot 15 includes both the front door to the House and the driveway. Thus, granting U.S. Bank an easement over Lot 14 is not necessary to make the House on Lot 15 accessible to U.S. Bank, especially considering that Vournas confirms in his briefing that he "is not claiming the house – he is just wanting it off the land conveyed in the tax deed." Therefore, Vournas is entitled to summary judgment dismissal of U.S. Bank's easement claim.[6]

## C

Turning now to Vournas' counterclaims, Vournas has disclaimed any interest in the House and instead argues U.S. Bank is trespassing on Lot 14 because the House "had burned after the tax deed was issued and the contractor rebuilt on Lot 14 over his objection." As a remedy for this encroachment onto his land, Vournas contends he is entitled to ejectment to compel U.S. Bank to remove the House from Lot 14. We disagree.

---

[6] Because we agree with Vournas that U.S. Bank is not entitled to reformation, an order quieting title, or an easement for the reasons stated in the text above, we do not address his additional arguments on appeal that (1) U.S. Bank's collateral attack on the tax deed is untimely under RCW 4.16.090, (2) U.S. Bank's reformation claim is untimely under RCW 4.16.040, (3) U.S. Bank's claims are barred by collateral estoppel (now referred to as issue preclusion), (4) "[t]he trial court erred in reforming a deed of trust that had been fully satisfied and merged into a trustee's deed thus effectuating an unlawful taking," and (5) Vournas did not receive adequate notice of the trustee's sale under RCW 61.24.040(b). Additionally, we conclude Vournas is entitled to summary judgment dismissal of U.S. Bank's claims for a prescriptive easement and for mutual recognition and acquiescence because U.S. Bank has failed to respond below or on appeal to Vournas' arguments that both of these claims fail. *See* CR 56(e) (stating that when the moving party makes and supports a motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of a pleading, but a response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). Lastly, we conclude Vournas is entitled to summary judgment dismissal of U.S. Bank's claims for declaratory and injunctive relief with respect to the disputed portion of Lot 14 because these claims have been effectively resolved in Vournas' favor with the dismissal of U.S. Bank's other claims.

An ejectment action, like a quiet title action, is governed by RCW 7.28.010. This statute provides that a person "having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action . . . against the tenant in possession." "Encroachment occurs when one builds a structure on another's land; it is a form of trespass." *Proctor v. Huntington*, 169 Wn.2d 491, 496, 238 P.3d 1117 (2010).

In encroachment cases, courts have traditionally applied a "property rule" under which property owners have an absolute right to eject trespassers and require them to remove encroaching structures. *Id.* Courts have previously applied this strict property rule where a neighboring structure encroaches onto a parcel sold at tax sale. *See Palin v. Sherman*, 38 Wn.2d 806, 808, 232 P.2d 105 (1951) (affirming order directing neighbor to remove their house from an adjacent six-foot strip of land sold at tax sale). Over time, however, courts have recognized an alternative "liability rule" allowing them to "issue a damages award and compel the landowner to convey a property interest to the encroacher." *Garcia v. Henley*, 190 Wn.2d 539, 542, 415 P.3d 241 (2018).

With this alternative remedy in mind, compelling the removal of an encroaching structure is a form of "extraordinary relief" that "is not to be issued as a matter of course." *Arnold v. Melani*, 75 Wn.2d 143, 152, 449 P.2d 800 (1968). In *Arnold*, our Supreme Court established the "test for when a court may substitute a liability rule for the traditional property rule in encroachment cases":

> [A] mandatory injunction can be withheld as oppressive when, as here, it appears . . . that: (1) The encroacher did not simply take a calculated risk, act in bad faith, or negligently, willfully or indifferently locate the encroaching structure; (2) the damage to the landowner

was slight and the benefit of removal equally small; (3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use; (4) it is impractical to move the structure as built; and (5) there is an enormous disparity in resulting hardships.

*Proctor*, 169 Wn.2d at 500 (quoting *Arnold*, 75 Wn.2d at 152).  "[D]ue to its equitable nature, the question of whether each *Arnold* element has been met should be analyzed using the 'inherently flexible and fact-specific' equitable power of the court to fashion remedies that do equity.'" *Garcia*, 190 Wn.2d at 543 (quoting *Proctor*, 169 Wn.2d at 503).

Here, Vournas effectively seeks removal of the House from Lot 14 under the traditional property rule.  U.S. Bank acknowledged at oral argument that the House "is on his [Vournas'] property" (Wash. Ct. of Appeals oral argument, *U.S. Bank Nat'l Ass'n v. Vournas*, No. 85942-1-I (Oct. 31, 2024), at 11 min., 43 sec. (on file with court)), but it nonetheless contends removal is unwarranted because all five *Arnold* elements are satisfied.  Because the trial court did not determine below whether the five *Arnold* elements are satisfied, we remand to the trial court to address these fact-specific elements and, if satisfied, fashion appropriate equitable relief.

### III

Both parties claim they are entitled to attorney fees on appeal pursuant to RCW 7.28.083(3), which states:

> The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees.  The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just.

Because Vournas has prevailed on U.S. Bank's adverse possession claim, we grant Vournas' request for reasonable attorney fees for time spent litigating the claim on appeal (subject to compliance with RAP 18.1) and deny U.S. Bank's corresponding request.

Reversed in part, affirmed in part, and remanded for further proceedings.

Feldman, J.

WE CONCUR:

Chung, J.

Smith, C.J.